ACCEPTED
03-15-00063-CR
4682610
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/27/2015 10:57:05 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00063-CR

# In the Court of Appeals
# for the Third District of Texas at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/27/2015 10:57:05 PM
JEFFREY D. KYLE
Clerk

_____

EX PARTE JAMES RICHARD "RICK" PERRY

_____

APPEAL FROM THE DENIAL OF APPLICATION FOR WRIT OF HABEAS CORPUS

STATE OF TEXAS V. JAMES RICHARD "RICK" PERRY

D-1-DC-14-100139

IN THE DISTRICT COURT FOR THE 390TH
JUDICIAL DISTRICT, TRAVIS COUNTY, TEXAS

_____

# APPELLEE'S BRIEF

_____

**ORAL ARGUMENT REQUESTED**

MICHAEL MCCRUM
TEXAS BAR NO. 13493200
DISTRICT ATTORNEY PRO TEM
TRAVIS COUNTY, TEXAS
700 N. St. Mary's St., Ste. 1900
San Antonio, Texas 78205
Tel: (210) 225-2285
Fax: (210) 225-7045

DAVID GONZALEZ
TEXAS BAR NO. 24012711
ASST. DISTRICT ATTORNEY PRO TEM
TRAVIS COUNTY, TEXAS
206 East 9th Street, Ste. 1511
Austin, Texas 78701
Tel.: (512) 381-9955
Fax: (512) 485-3121

ATTORNEYS FOR THE STATE OF TEXAS

## TABLE OF CONTENTS

Statement Regarding Oral Argument ................................................................ xvi

Index of Authorities ...................................................................................... iv

Statement of Facts.............................................................................................1

Summary of the Argument..............................................................................2

Argument...........................................................................................................3

    I. The First Amendment Does Not Protect All Forms of Speech..........................6

        A.    Extortion and *quid pro quo* threats issued by a public servant are not forms of protected free expression. ................................................6

        B.    The Constitution allows the Legislature to put some limits on speech when regulating a public servant's speech. ...................................8

        C.    The Constitution allows the Legislature to regulate a public servant's speech, even though it would necessarily put some limits on *private* speech...............................................................10

              1. The face of the statute at issue is not overbroad. ...........................13

              2. The statute is not subject to strict scrutiny because it does not distinguish between favored and disfavored speech. .....................19

              3. Even if heightened scrutiny were applied, "Coercion of a Public Servant" statute withstands that scrutiny. ...............................21

    II. The coercion statute provides adequate notice consistent with due process. ......................................................................................23

        A.    The context of the statutory meaning of the word "coercion" provides fair warning. ...............................................................24

        B.    The Legislature intended to cover threats of lawful action.....................26

III. District Court Properly Held As-Applied Challenges Not
Cognizable in Pretrial Habeas Proceeding........................................31

    A.    Appellant's Improper Reliance on Speculation. ......................................31

    B.    "As Applied" Challenge Not Cognizable in Pretrial Habeas
    Review..................................................................................................32

            1. The Claims Are Not Ripe For Review. ............................................34

            2. There must first be facts in evidence before this Court can
            decide Appellant's "as applied" challenges. ......................................35

    C.  All of Appellant's Remaining Claims Are "As Applied"
    Challenges. ..........................................................................................37

IV. Separation of Powers Doctrine Allows Judicial Branch to
Check Coercive Use of Executive Power. ..........................................43

V. A Governor is Not Immune from Criminal Prosecution. ...............................48

    A.    Texas state Speech or Debate Privilege Narrower
    than federal Speech or Debate Privilege. ..............................................50

    B.    The Speech or Debate Privilege applies to Members of the
    Legislature, not a Governor...................................................................53

            1. No governor ever has been afforded Speech or Debate
            privilege or legislative immunity from criminal prosecution...............53

            2. The privilege does not extend to all legislative-related topics of
            conversation.......................................................................................55

    C.    The common law doctrine of legislative immunity does not make
    a Texas governor above the law. ............................................................56

Prayer ............................................................................................................61

Certificate of Compliance ...............................................................................62

Certificate of Service ......................................................................................63

Appendix ........................................................................................... A-1

Exhibit A: 1973 version of §§ 36.01, 36.03 ...................................... A-1

Exhibit B: 1989 revision of §§ 36.01, 36.03 .................................... A-5

Exhibit C: 1993 revision of §§ 36.01, 36.03 - Naishtat Amendment ................. A-37

Exhibit D: 1993 revision of §§ 36.01, 36.03 .................................... A-39

Exhibit E: Speech or Debate Privilege Chart ................................... A-48

iii

# INDEX OF AUTHORITIES

**Texas Cases**

*Allen v. State*,
604 S.W.2d 191, 192 (Tex. Crim. App. 1980) ........................................................13

*Armadillo Bail Bonds v. State*,
802 S.W.2d 237 (Tex. Crim. App. 1990) ................................................................44

*Board v. State*,
03-96-00024-CR, 1998 WL 271043
(Tex. App.—Austin May 29, 1998, pet. ref'd) ................................... 7, 25, 26, 35

*Boykin v. State*,
818 S.W.2d 782 (Tex. Crim. App. 1991) ................................................................24

*Briggs v. State,*
740 S.W.2d 803 (Tex. Crim. App. 1987) ................................................................23

*Bynum v. State*,
767 S.W.2d 769 (Tex. Crim. App. 1989) ................................................................24

*Cuellar v. State*,
70 S.W.3d 815 (Tex. Crim. App. 2002) ..................................................................42

*Duncantell v. State*,
230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ........... 14, 24

*Ex parte Boetscher*,
812 S.W.2d 600 (Tex. Crim. App. 1991) ................................................................33

*Ex parte Cross*,
69 S.W.3d 810 (Tex. App.—El Paso 2002, pet. ref'd) ..........................................35

*Ex parte Cruzata*,
220 S.W.3d 518 (Tex. Crim. App. 2007) ................................................................41

*Ex parte Delbert*,
582 S.W.2d 145 (Tex. Crim. App. 1979) ...............................................36

*Ex parte Doster*,
303 S.W.3d 720 (Tex. Crim. App. 2010) ...............................................37

*Ex parte Ellis*,
309 S.W.3d 71 (Tex. Crim. App. 2010) ...................................... passim

*Ex parte Firmin*,
60 Tex.Crim. 368 (Tex. Crim. App. 1910)..............................................38

*Ex parte Granviel*,
561 S.W.2d 503 (Tex. Crim. App. 1978) ...............................................24

*Ex parte Groves*,
571 S.W.2d 888 (Tex. Crim. App. 1978) ...............................................36

*Ex parte Hopkins*,
610 S.W.2d 479 (Tex. Crim. App. 1980) ...............................................36

*Ex parte Lo*,
424 S.W.3d 10 (Tex. Crim. App. 2013) .................................................20

*Ex parte Mattox*,
683 S.W.2d 93 (Tex. App.—Austin 1984, pet. ref'd) .........................41

*Ex parte Powell*,
558 S.W.2d 480 (Tex. Crim. App. 1977) ...............................................36

*Ex parte Ragston,*
402 S.W.3d 472 (Tex. App.—Houston [14th Dist.] 2013) ..................38

*Ex parte Smith*,
185 S.W.3d 887 (Tex. Crim. App. 2006) ...........................................................35

*Ex parte Tamez*,
4 S.W.3d 366 (Tex. App.—Houston [1st Dist.] 1999, no pet.)............................35

*Ex Parte Thompson*,
414 S.W.3d 872 (Tex. App.—San Antonio 2013),
*aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014).....................................................13

*Ex parte Townsend*,
137 S.W.3d 79 (Tex. Crim. App. 2004) ...............................................................41

*Ex parte Weise*,
55 S.W. 3d 617 (Tex. Crim. App. 2001) ........................................... 32, 33, 35, 41

*FM Properties Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000).................................................................................15

*Gant v. State*,
814 S.W.2d 444 (Tex. App.—Austin 1991, no pet.)............................................18

*Gillenwaters v. State*,
205 S.W.3d 534 (Tex. Crim. App. 2006) ............................................................15

*Karenev v. State*,
281 S.W.3d 429 (Tex. Crim. App. 2009) ............................................................37

*Langever v. Miller*,
76 S.W.2d 1025 (Tex. 1934) ...............................................................................44

*Margraves v. State*,
34 S.W.3d 912 (Tex. Crim. App. 2000) ..............................................................42

*Mayhew v. Town of Sunnyvale*,
964 S.W.2d 922 (Tex. 1998) ...............................................................35

*Mutscher v. State*,
514 S.W.2d 905 (Tex. Crim. App. 1974) ................................50, 51, 52, 53, A-49

*Olivas v. State*,
203 S.W.3d 341 (Tex. Crim. App. 2006) ...................................... 17, 18

*Parent v. State*,
621 S.W.2d 796 (Tex. Crim. App. 1981) ............................................39

*Puckett v. State*,
801 S.W.2d 188 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd),
*cert. denied*, 502 U.S. 990 (1991).............................................................6

*Roberts v. State*,
278 S.W.3d 778 (Tex. App.—San Antonio 2008, pet. ref'd)............ 17, 18, 19, 24

*Rodriguez v. State*,
93 S.W.3d 60 (Tex. Crim. App. 2002) ...............................................24

*Sanchez v. State*,
995 S.W.2d 677 (Tex. Crim. App. 1999) ...................................... passim

*Santikos v. State*,
836 S.W.2d 631 (Tex. Crim. App. 1992) (op. on reh'g) .............................. 15, 39

*State ex rel. Lykos v. Fine*,
330 S.W.3d 904 (Tex. Crim. App. 2011) ............................................... 15, 32, 36

*State v. Hanson*,
793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.) ...................................... 24, 25

*State v. Rosseau*,
   396 S.W.3d 550, 558 (Tex. Crim. App. 2013) ....................................................15


**Federal Cases**

*Ashcroft v. Am. Civil Liberties Union*,
   535 U.S. 564 (2002)................................................................................................13

*Barnes v. Glen Theatre, Inc.*,
   501 U.S. 560 (1991)..................................................................................................9

*Board of Regents of Univ. of Wis. System v. Southworth*,
   529 U.S. 217 (2000)..................................................................................................9

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973)................................................................................................13

*Brown v. Walker*,
   161 U.S. 591 (1896)................................................................................................12

*Cano v. Davis*,
   193 F.Supp.2d 1177 (C.D.Calif. 2002) ........................................................... A-51

*City of San Diego, Cal. v. Roe*,
   543 U.S. 77 (2004)....................................................................................................9

*Clinton v. Jones*,
   520 U.S. 681 (1997)........................................................................................ 47, 48

*Coates v. City of Cincinnati*,
   402 U.S. 611 (1971)................................................................................................23

*Coleman v. Miller,*
   307 U.S. 433 (1939)................................................................................................46

*Colten v. Commonwealth of Kentucky*,
407 U.S. 104 (1972)..................................................................23

*Columbia Broadcasting System, Inc. v. Democratic National Committee*,
412 U.S. 94 (1973)....................................................................9

*Empress Casino Joliet Corp. v. Blagojevich*,
638 F.3d 519 (7th Cir. 2011) ..................................................54

*Ex parte Virginia*,
100 U.S. 339 (1879)................................................................46

*Ferguson v. Estelle*,
718 F.2d 730 (5th Cir. 1983) ..................................................23

*Ford v. Tenn. Senate*,
2007 WL 5659414 (W.D.Tenn. 2007)................................... A-51

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)..................................................................9

*Goldwater v. Carter*,
444 U.S. 996 (1979)................................................................46

*Gravel v. United States*,
408 U.S. 606 (1972).................................................. 55, 58, A-49

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)................................................................23

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979)........................................................ 59, A-49

*Imbler v. Pachtman*,
424 U.S. 409 (1976)................................................................59

ix

*In re Grand Jury (Cianfrani),*
    563 F.2d 577 (3d Cir. 1977)    A-51

*In re Grand Jury (Colafela),*
  821 F.2d 946 (3d Cir. 1987, *reh'g en banc*) .................................................... A-50

*In re Grand Jury (Eilberg),*
  587 F.2d 589 (3d Cir. 1978) ...................................................................... A-50

*Johanns v. Livestock Mktg. Ass'n,*
  544 U.S. 550 (2005)...............................................................................9, 10

*Johnson v. Poway Unified Sch. Dist.,*
  658 F.3d 954 (9th Cir. 2011) ...................................................................9

*Kilbourn v. Thompson,*
  103 U.S. 168 (1880) ............................................................................. A-49

*Meyer v. Grant,*
  486 U.S. 414 (1988)..............................................................................20

*Miller v. Alabama,*
  132 S.Ct. 2455 (2012)...........................................................................38

*Miller v. California,*
  413 U.S. 15 (1973)..................................................................................6

*Miranda v. Arizona,*
  384 U.S. 436, 458–60 (1966)..................................................................12

*Nixon v. United States,*
  506 U.S. 224 (1993)..............................................................................45

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)..................................................................59

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968)....................................................................9

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009)................................................................8, 11

*Police Dep't v. Mosley*,
   408 U.S. 92 (1972)..................................................................9, 10

*Pulliam v. Allen*,
   466 U.S. 522 (1984)..................................................................57

*Roper v. Simmons*,
   543 U.S. 551 (2005)..................................................................38

*Roth v. United States*,
   354 U.S. 476 (1957)..................................................................21

*Rust v. Sullivan*,
   500 U.S. 173 (1991)..................................................................11

*Supreme Court of Virginia v. Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980)..................................................................57

*Tenney v. Brandhove*,
   341 U.S. 367 ...................................................................... A-49

*Texas Div., Sons of Confederate Veterans, Inc. v. Vandergriff*,
   759 F.3d 388, 394 (5th Cir. 2014), *cert. granted sub nom.*
   *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   135 S. Ct. 752 (2014)..................................................................8

xi

*United States v. Bass*,
    404 U.S. 336 (1971)..................................................................42

*United States v. Biaggi*,
    853 F.2d 89 (2d Cir. 1988) ...................................... A-50

*United States v. Brewster*,
    408 U.S. 501 (1972)..................................... 49, 51, A-49

*United States v. Brown*,
    381 U.S. 437 (1965)..................................................................45

*United States v. Craig*,
    573 F.2d 455 (7th Cir. 1977, *reh'g en banc den.*) ........................................... A-51

*United States v. DiCarlo*,
    565 F.2d 802 (1st Cir. 1977) ........................................ A-50

*United States v. Eilberg*,
    507 F.Supp. 267 (E.D.Penn. 1980) ................................ A-51

*United States v. Gillock*,
    445 U.S. 360 (1980)............................... 55, 57, 59, A-49

*United States v. Helstoski*,
    442 U.S. 477 (1979)..................................... 56, A-49

*United States v. Hutson*,
    843 F.2d 1232 (9th Cir. 1988) ...........................................7

*United States v. Johnson*,
    383 U.S. 169 (1966)..................................... 51, A-49

*United States v. Kozminski*,
    487 U.S. 931 (1988)..................................................................22

*United States v. Mandel*,
  415 F.Supp. 1025 (D.Md. 1976)
  (May 4, 1976 supplemented opinion) ...................................................... 46, 53, 56

*United States v. Mandel*,
  415 F.Supp. 997 (D.Md. 1976) .................................................................... 53, 54

*United States v. Marchetti*,
  466 F.2d 1309 (4th Cir. 1972), *cert. denied*, 409 U.S. 1063 (1972) ......................7

*United States v.Nelson*,
  486 F.Supp. 464 (W.D.Mich. 1980) .............................................................. A-51

*United States v. Playboy Entm't Group, Inc.*,
  529 U.S. 803 (2000) ..................................................................................20

*United States v. Quinn*,
  514 F.2d 1250 (5th Cir. 1975), *cert. denied,* 424 U.S. 955 (1976) ........................7

*United States  v. Renzi*,
  2014 WL 5032356 (9th Cir 2014) ................................................................ A-50

*United States v. Swindall*,
  971 F.2d 1531 (11th Cir. 1992) ........................................................................57

*United States v. Velasquez*,
  772 F.2d 1348 (7th Cir. 1985) ........................................................................13

*United States Football League v. National Football League*,
  1986 WL 6341 (S.D.N.Y. 1986) (not reported) ............................................ A-51

*Urofsky v. Gilmore*,
  216 F.3d 401 (4th Cir. 2000) ...........................................................................9

*Village of Hoffman Estates,*
   455 U.S. 489 (1982)................................................................24

*Virginia v. Black*,
   538 U.S. 343 (2003)................................................................20

*Wainwright v. Sykes*,
   433 U.S. 72 (1977)..................................................................36

*Watts v. U.S.*,
   394 U.S. 705 (1969)..................................................................6

**State Cases --Other Jurisdictions**
*Jorgensen v. Blagojevich*,
   811 N.E.2d 652 (Ill. 2004).........................................................46

**Constitutional Provisions**
TEX. CONST. art. II, § 1.................................................................60
TEX. CONST. art. IV, § 12...............................................................45
TEX. CONST. art. XVI, § 41 ............................................................52

U.S. CONST. amend. I......................................................................9
U.S. CONST. amend. V ...................................................................12

**Statutes**
TEX. GOV'T CODE ANN. § 311.011 ...............................................24
TEX. PENAL CODE ANN. § 1.07(a)(9) .......................................... *passim*
TEX. PENAL CODE ANN. § 36.03 ............................................... *passim*
TEX. PENAL CODE ANN. § 38.12(b) ...............................................22
TEX. PENAL CODE ANN. § 6.03.....................................................26

**Other Authorities**

Joseph Blocher,
  *Viewpoint Neutrality and Government Speech*,
  52 B.C.L. Rᴇᴠ. 695, 695 (2011) ....................................................................9, 10

Maury Maverick Jr.,
  "Leave First Amendment Alone," *Texas Iconoclast* 123 (TCU Press 1997).......10

## STATEMENT REGARDING ORAL ARGUMENT

Typically, prosecutions for extortionate acts are against persons *without* power trying to influence or threaten a person *with* power. By contrast, this case presents the application of a criminal statute for extortionate and abusive acts committed by a public official *with power*.

This case necessarily requires discussion and thought of nuanced questions about what restraint, if any, should be placed on the exercise of power by our government, particularly where such exercise of power enters the domain of definitions of criminal conduct. This case also addresses the extent our State can restrict what public officials say to avoid the public official unlawfully using the imprimatur of government speech to escape prosecution for criminal acts. Questions about threats, extortion, and other forms of harm may be addressed in oral argument to discuss the parameters of remedy when a public official unlawfully abuses the power of his office for benefit other than pecuniary gain.

All citizens of Texas have a common interest in the outcome of this matter and in the answers to such complex questions. There is a compelling interest for oral argument to allow a discussion about a law that is broad enough to capture implied or disguised, yet very real, threats without being so specific that it limits its application. Oral argument will likely involve a discussion of the limits—and abuses—of power in our representative democracy and how it can be regulated.

This case cuts to the heart of what citizens believe about government and politics and power.

Oral argument is appropriate to address the complexity of these important issues.

**STATEMENT OF FACTS**

This case is about a public servant's commission of two crimes in violation of two Texas statutes: "Coercion of a Public Servant," based on an illegal *quid pro quo* threat made by then-Governor Perry against an elected public servant of a distinct jurisdiction, and "Abuse of Official Capacity," based on Mr. Perry's corresponding abuse of the power granted to his office in retaliation against that public servant for refusing to accede to his threat. Appellant filed motions to quash the indictment, yet also filed applications for writ of habeas corpus on the same grounds so that pretrial appeals could be filed. Other than the allegations in the indictment, however, there is no evidence or presentation of facts yet in the record. Then-District Judge Bert Richardson (now Texas Court of Criminal Appeals Judge Richardson) said it best in ruling upon Appellant's pleadings:

> The unique circumstances involved in this case have been widely reported, argued, and discussed by many with no standing in the case, including the amicus briefs and many other self-appointed 'experts.' The alleged and speculated upon facts are not properly before this court at this time, and the court has no authority at this stage to examine the evidence that was presented to the Grand Jury.[1]

The district court's rejection of Appellant's constitutional challenges to each of the criminal statutes were without evidentiary hearing. Contrary to Appellant's critique of Judge Richardson for purportedly failing to "fully grapple" with Appellant's

---

[1] C.R. 468, n. 3.

1

challenges, the district court's lengthy and well-thought-out order rejecting Appellant's assertions demonstrate a correct application of legal precedent.[2]

## SUMMARY OF THE ARGUMENT

In carrying out their assigned responsibility, our elected representatives passed and entered as law Texas Penal Code Sections 36.03 (Coercion of a Public Servant) and 39.02 (Abuse of Official Capacity). These are not statutes designed to guard against blatant bribes or unmistakable forms of corruption. Rather, these statutes are designed to protect the democratic process from more dangerous, sometimes less obvious, forms of corruption. They are designed to protect against the abuse of government power.

The face of the "Coercion of a Public Servant" statute does not violate our constitutional Free Speech clause for three reasons: it regulates a category of unprotected speech; the State has a compelling need to criminalize extortion committed under color of public office; and, the statute does not prohibit a substantial amount of protected speech.

In addition, the statutes at issue are not unconstitutionally vague on their face. Courts have held that statutory definitions and common usage of the terms "coercion" and "threat" provide sufficient notice to satisfy Due Process vagueness concerns.

---

[2] C.R. 464–483.

Further, courts are without authority, and have repeatedly rejected requests, to consider "as-applied" constitutional challenges to statutes in a pretrial habeas context, particularly where the court would be required to speculate as to the facts made the basis of the prosecution. Such is the situation in the instant case, where Appellant's "as-applied" challenges to both statutes are replete with speculation.

Appellant plainly misapplies the legal principle of separation of powers in his effort to avoid prosecution for his criminal acts. Courts have repeatedly rejected similar pleas from public officials, including governors, who have been charged with committing crimes in connection with the abusive exercise of their governance.

Similarly, Appellant is not immune from criminal prosecution as a result of his previous occupation as governor. The Texas constitutional Speech and Debate Clause has never been, and cannot be, used to insulate a governor from criminal prosecution. Finally, the principle of legislative immunity simply does not apply to the instant criminal case, as it has never been applied to allow immunity from criminal acts.

## ARGUMENT

Coercion is a word that our society does not use lightly.

When we think of coercion, one knee-jerk connotation is "government coercion." Nobody wants the government to tell us what to do. Our society is

3

founded upon notions of freedom of expression, freedom of speech, and freedom of choice. Coercion is the antithesis of all of these values—especially when it involves government coercion.

The most devastating aspect of coercion is that it deceptively makes the victim believe she is responsible for her own demise. Coercion creates the appearance of choice, the appearance of responsibility for the choice, and the punishment and moral blameworthiness for making the "wrong" choice. As is evident in this case, coercion happens when some may wonder aloud why Rosemary Lehmberg did not just resign so the Public Integrity Unit legislatively-authorized funding would not be eliminated, criminal investigations would not have to be terminated, and people would not have to lose their jobs. Coercion achieves his objective when a public servant in power need only make a threat and then allow the victim to suffer the consequences.

When an elected body recognizes the danger of coercion, and when they recognize that public servants are those with the greatest opportunity to take coercive actions, they are right to place limits on conduct and proscribe it. Criminal coercion has a rich context that is much deeper than "threat." You can make an "idle threat." There is no analogy for criminal coercion. Coercion is specific. Coercion is not idle, but intentional.  Unlike conduct that amounts to general pressure resulting from "duress" or "harassment" or "intimidation" or "undue

4

influence," coercion implies not just intent, but a *malicious* intent to induce another to act. Coercion destroys effective consent. Coercion crosses a line, landing firmly outside of the First Amendment protection of free expression and well within the authority of the Legislature to regulate and criminalize it. In defining the term coercion and otherwise describing that which crosses the line into unacceptable conduct, the Legislature placed limits on and proscribed coercion without limiting application from the many factual scenarios that persons can conceive to inflict upon another.

**I. The First Amendment Does Not Protect All Forms of Speech.**

    **A. Extortion and *quid pro quo* threats issued by a public servant are not forms of protected free expression.**

Appellant Perry seeks dismissal of the indictment because it purportedly seeks to penalize his constitutional right to free speech. The criminal statute "Coercion of a Public Servant" protects against extortionate conduct and *quid pro quo* threats made against public servants. After fourteen years as governor of our state and numerous prosecutions against Texas citizens under this statute, Mr. Perry asserts for the first time that this statute, on its face, is unconstitutional under the First Amendment to the U.S. Constitution. Appellant is wrong.

There are categories of speech that do not deserve nor receive First Amendment protection. First Amendment jurisprudence is filled with nuances that rely entirely upon the words spoken, the identity of the speaker, the relationship between the speaker and the listener, and the venue of the dialogue. For example, profanity may be included in a speech protected by the First Amendment—but it does not mean that regulations against profanity are vague or overbroad. A legislature may prohibit materials that are obscene,[3] threats of violence,[4] and retaliatory acts without running afoul of the Constitution.[5]

---

[3] *Miller v. California*, 413 U.S. 15 (1973).
[4] *Watts v. U.S.*, 394 U.S. 705 (1969).
[5] *Puckett v. State*, 801 S.W.2d 188, 192 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd), *cert. denied*, 502 U.S. 990 (1991) ("Section 36.06 [Obstruction or Retaliation] implicates no First

The litmus test of unprotected speech is not simply threats of physical violence, but include threats made that would expose a witness to "hatred, contempt or ridicule."[6] Verbal extortion "has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money."[7] Similarly, *quid pro quo* threats made under a display of authority and power are equally prohibited, particularly where the relationship of power between the speaker and the listener gives rise to unlawfulness of the threat.[8]

---

Amendment protections. By its terms, the statute punishes only those individuals who intentionally or knowingly harm or threaten to harm another person by an unlawful act.").

[6] *Board v. State*, 03-96-00024-CR, 1998 WL 271043, at *5 (Tex. App.—Austin May 29, 1998, pet. ref'd) (not designated for publication) ("Appellant reasons that Section 36.05 [Tampering with Witness] is unconstitutional in that it allows prosecution for protected speech and writing . . . . We believe the State of Texas has a very substantial interest in protecting witnesses from threats of exposure to hatred, contempt or ridicule.").

[7] *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999) (citing *United States v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972), *cert. denied*, 409 U.S. 1063 (1972); *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975), *cert. denied,* 424 U.S. 955 (1976); *and United States v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1988).

[8] *Sanchez*, 995 S.W.2d at 688 (First Amendment does not give public official right to trade official acts for submission to conduct the official was not otherwise entitled).

**B. The Constitution allows the Legislature to put some limits on speech when regulating a public servant's speech.**

At issue is whether the State has a compelling interest in regulating what an elected public servant may say or do under the umbrella of powers entrusted to him by the people. Appellant's facial challenge raises the thorny question: When a public official conveys a threat to use his power to accomplish an objective that he otherwise could not achieve, does he speak as a private individual or as a representative of the government? This difficulty of interpreting what is considered government speech or private speech has recently been addressed in several cases.[9] Where one public servant is threatened by another public servant, however, the possibility that the public servant speaker may assert First Amendment protection is precisely what makes the coercive threat so effective in seeking to influence the public servant listener. This precisely is the legitimate basis for courts allowing the State to regulate and put limits on a public servant's speech with greater latitude than regulating speech of a private citizen.

---

[9] *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) & *Texas Div., Sons of Confederate Veterans, Inc. v. Vandergriff*, 759 F.3d 388, 394 (5th Cir. 2014), *cert. granted sub nom. Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 752 (2014).

Clearly, the government cannot restrict expression merely because of its message, ideas, subject matter, or content."[10] However, a restriction on "the Government's _**own**_ speech . . . is exempt from First Amendment scrutiny,"[11] even when such restriction has the effect of limiting speech. Indeed, the government may restrict what its agents say, and how and when they say it,[12] for the constitutional protection for free speech restricts government regulation of *private* speech; it does not regulate government speech.[13] The U.S. Supreme Court has held that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes …"[14] The basis for the distinction is that the State has a different interest in regulating what public servants and government employees may do or say that differs greatly from regulation or restriction of private citizens.[15] The First Amendment was designed as a means of insulating power or control by those in

---

[10] *Police Dep't v. Mosley*, 408 U.S. 92, 95 (1972); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 577 (1991) (Scalia, J., concurring in the judgment) ("Where the government prohibits conduct *precisely because of its communicative attributes*, we hold the regulation unconstitutional.").

[11] *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005); *see also* Joseph Blocher, *Viewpoint Neutrality and Government Speech*, 52 B.C.L. Rᴇᴠ. 695, 695 (2011).

[12] *See, e.g., City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011); *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006).

[13] *See Johanns* 544 U.S. at 553 ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny"); *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 139 n.7 (1973) (Stewart, J., concurring); *Board of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217, 229 (2000).

[14] *Garcetti*, 547 U.S. at 421.

[15] *See City of San Diego v. Roe*, 543 U.S. at 80; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000).

9

positions of governmental authority, not the other way around.[16] Statements made

by public officials to other public officials are unprotected under *Garcetti* and its

progeny and are no more entitled to First Amendment protection than criminal

threats or extortion.

### C. The Constitution allows the Legislature to regulate a public servant's speech, even though it would necessarily put some limits on *private* speech.

Appellant argues that § 36.03(A)(1) and § 1.07(a)(9)(F) may also curtail

private speech. But the State can limit private speech when it has the effect of

coercing a public servant. "The Government's own speech . . . is exempt from First

Amendment scrutiny,"[17] even when such regulation has the effect of limiting

*private* speech. As the government may restrict what its agents say, and how and

when they say it, it stands to reason, then, that the "government may be able to

restrict [some] private expression 'because of its message, its ideas, its subject

matter, or its content,' so long as in so doing it is expressing its own viewpoint."[18]

That is, *some* private speech may be burdened by the very nature of

regulating government speech. If the government does not prefer its subsidized

---

[16] Famed Texas Free Speech advocate, lawyer, and legislator, Maury Maverick Jr., noted that, at its core, the First Amendment is a tool to protect the minority from the majority, and not the other way around: "Madison, Jefferson, George Mason and others explained that the purpose [of the First Amendment] was to limit and qualify power, guard against legislative and executive abuses, and protect the minority against the majority." Maury Maverick Jr., "Leave First Amendment Alone," *Texas Iconoclast* 123 (TCU Press 1997).

[17] *Johanns*, 544 U.S. at 553; Blocher, *supra* note 11, at 695.

[18] *See* Blocher, *supra* note 11, at 696 (citing *Mosley*, 408 U.S. 92–95).

doctors discussing abortion in the same clinic that uses government funding, it is well within its power to prohibit those abortion discussions.[19] Likewise, by choosing certain *types* of monuments it prefers in its parks, the government is well within its power to prohibit private parties from erecting other *types* of monuments.[20] These limits on private speech are constitutionally permissible, as they are incidental to the Government's regulation of its own speech.

At its core, § 36.03(A)(1) and § 1.07(a)(9)(F) is the Texas Legislature regulating its own speech and actions: it is taking affirmative action to prevent its public officials from speaking or acting as a result of coercion. Its viewpoint is simple: official speech should not be coerced speech. As is expected, the Legislature believes it ill-advised for its officials to speak when they are coerced into doing so.

But proclaiming that potential victims of coercion should not be coerced is a fool's errand. Due to the *coercive* nature of *coercion*, the Legislature cannot achieve its goal by *just* placing restrictions on the private citizen speaking to the government. To achieve its preferred government speech, the Legislature has to burden the coercer, whoever that may be.

---

[19] *See Rust v. Sullivan*, 500 U.S. 173, 193 (1991).
[20] *See Summum*, 555 U.S. at 467.

11

The Framers also sought to prevent coercion in certain respects. In fact, they thought it foundational to only allow criminal confessions if they were free from coercion.[21] Coerced confessions, history proved, were unreliable and untrustworthy: only serving the ends of the coercer and not that of justice.[22] This cornerstone proved difficult to build upon, as coercion was tricky. Coercers constantly changed and evolved their coercion-tactics—seeking to optimize both their effectiveness and their societal palatability.[23] Through the centuries of struggle combatting coerced confessions, one truth was evident: restraining the coercer was the only way to prevent coerced statements.[24]

And so it was with public officials. A rule to public officials stating: "If you are coerced to speak, do not speak" would be absurd—the only effective way to prevent coerced official speech is to restrict the coercer. As such, the Legislature is posed with a dilemma: either refuse to restrict any private speech and allow, unfettered, its public officials to give coerced speech, or prevent all coercers from influencing official speech and action. The first choice allows corruption of government, while the second necessarily places some limits on private speech. Both choices are constitutionally permissible.

---

[21] *See* U.S. CONST. amend. V.
[22] *See Brown v. Walker*, 161 U.S. 591, 596–597 (1896); *Miranda v. Arizona*, 384 U.S. 436, 458–60 (1966).
[23] *See Miranda*, 384 U.S. at 448–458.
[24] *See Miranda*, 384 U.S. at 467–70.

**1. The face of the statute at issue is not overbroad.**

Historically, courts have been extremely hesitant to rule that a criminal statute is overbroad and facially unconstitutional—even when the government is restricting expression by private citizens. It has been said by our State's highest criminal court that the "overbreadth" doctrine is "strong medicine" that should be employed "sparingly" and "only as a last resort."[25] "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[26] That is, the court is to determine whether "the statute reaches a substantial amount of constitutionally protected conduct" and whether a "substantial number of the statute's applications are unconstitutional judged in relation to the statute's plainly legitimate sweep."[27] If the statute cannot be shown to restrict a substantial amount of constitutionally protected conduct, the overbreadth challenge must fail.[28] That is, the fact that the enforcement of a statute operates to prohibit or restrain a *private* citizen's right to speak does not itself mean that the statute is invalid.[29] If such a principle applies to the speech of a

---

[25] *Ex parte Ellis*, 309 S.W.3d 71, 91 (Tex. Crim. App. 2010).

[26] *Id*. (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); *see also Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 585 (2002).

[27] *Ex Parte Thompson*, 414 S.W.3d 872 (Tex. App.—San Antonio 2013), *aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014) (citations omitted).

[28] *Id.*

[29] *See Allen v. State*, 604 S.W.2d 191, 192 (Tex. Crim. App. 1980); *see also United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir. 1985) (threatening a person is not an opinion or idea that is needed in marketplace of ideas).

private citizen, than it would certainly follow that this same principle would apply to a public servant's speech.

There are several reasons Appellant's overbreadth challenge must fail. First, the statute cannot be overbroad if coercive threats are not entitled to First Amendment protection. In *Duncantell v. State*, the appellant asserted that the Interference of a Public Servant statute [Section 38.15] is overbroad because it "impermissibly restricts a person's right to walk about freely and the right to not remain silent."[30] The court examined whether the interference statute's limitations on conduct restricted a substantial amount of constitutionally protected expression.[31] In denying the overbreadth challenge, the court noted:

> The interference statute at issue here prohibits a person, *acting with criminal negligence*, from interrupting, disrupting, impeding, or otherwise interfering with a peace officer, while the peace officer is performing a duty or exercising authority imposed or granted by law. . . . Appellant has cited no authority, and we are aware of none, holding that conduct, which a person knew or should have known would interrupt, disrupt, impede, or interfere with a peace officer performing a duty imposed by law, such as investigating an accident or arresting a criminal suspect, is expressive conduct protected by the First Amendment.[32]

This is the same type of unprotected conduct Section 36.03 regulates.

Second, because regulating coercive threats by public officials is distinct from regulating purely political speech by private citizens, the presumption of the

---

[30] *Duncantell v. State*, 230 S.W.3d 835, 843–44 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).
[31] *Id.*
[32] *Id.* at 844 (emphasis added).

14

statute's validity remains. Further, even if there may be a slight amount of expressive conduct nestled within a coercive threat, the statute does not restrict a *substantial* amount of protected speech. When lodging a facial challenge, it is not enough to argue that a statute might operate unconstitutionally in a single circumstance, much less an extreme one.[33] He must prove that a prosecution can never be constitutionally applied to any Texas defendant charged with the statute at issue, no matter what the individual facts and circumstances of the particular case.[34] In reviewing a facial challenge, the court considers the statute only as it is written, rather than how it operates in practice.[35] And if the court can identify any factual circumstance in which the statute is valid, the facial challenge must fail.[36]

The following hypothetical factual circumstances demonstration the validity of the statute:

> -May a Governor call a police chief and inform him that if he does not tear up a ticket that was wrongfully issued against a family friend he might find that the funding for his entire police department be eliminated via line-item veto?

> -May a Senator call an elected district attorney and suggest that if a "misguided prosecution" is not dropped against his son he will strip funding for her office from his appropriations bill?

---

[33] *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (op. on reh'g).
[34] *See Gillenwaters v. State*, 205 S.W.3d 534, 536 n. 2 (Tex. Crim. App. 2006).
[35] *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011); *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000).
[36] *State v. Rosseau*, 396 S.W.3d 550, 558 (Tex. Crim. App. 2013).

-May a Representative e-mail a judge and suggest that if a groundless case in her court is not dismissed he would eliminate her judicial district?

-May a Governor threaten to veto funding for all highway monies in Travis County if the elected District Attorney does not resign?

-May a Governor threaten to veto state funding for all elected State District Court Judges in Travis County if the elected District Attorney does not resign?

Third, Appellant proposes a definition of "threaten" akin to "negotiate." Under this lens, Appellant ignores the words in context to make an overbreadth challenge. Derivations of the word "threat" are found 62 times in the Penal Code and 64 times in the Code of Criminal Procedure. In not a single instance is "threat" used in the context of "negotiation." It is the coercive control that provides the context for the threat. Coercion implies intimidation to violate any choice or free will of the listener. Coercion depends on a listener acting against his own interest to avoid a greater harm. Coercive threats are in the same category of extortion and blackmail—they cross a societal line between acceptable and unacceptable areas for negotiation.

Appellant proposes hypotheticals that would result in a "chilling effect." Coercion of a Public Servant has been illegal for over four decades. This case has been ongoing for a year and a half. No bill has been filed in the current legislative session seeking to modify, clarify or eliminate either Section 36.03 or 1.07(a)(9). And there is no evidence of any chilling effect. Appellant, himself, publicly

16

announces over and over again he would repeat his actions. Alarmist assertions of chilled expression notwithstanding, the State has an interest in chilling coercive threats to public servants because it is not expressive, and these threats chill legitimate speech.

Sections 36.03 and 1.07(a)(9) of the Texas Penal Code address acts of "coercion" which, by statutory definition, include "threats."[37] This statutory language necessarily limits the application of the statute to criminal behavior, and does not render it overbroad to substantially include innocent behavior. Additionally, the Texas Court of Criminal Appeals has addressed the scope of the term "threat," by indicating its "common, ordinary meaning" is the following:

1. to declare an intention of hurting or punishing; to make threats against;
2. to be a menacing indication of (something dangerous, evil, etc.); as the clouds *threaten* rain or a storm;
3. to express intention to inflict (injury, retaliation, etc.);
4. to be a source of danger, harm, etc., to.[38]

---

[37] *See* TEX. PENAL CODE ANN. § 1.07(a)(9) (West 2011).
[38] *Olivas v. State,* 203 S.W.3d 341, 345 (Tex. Crim. App. 2006); *see also Roberts v. State*, 278 S.W.3d 778, 790 (Tex. App.—San Antonio 2008, pet. ref'd).

The Court noted that Black's Law Dictionary defines "threat" as: "A communicated intent to inflict harm or loss on another or on another's property…"[39] The Court's analysis is consistent with the principle that words or phrases must be read also in the context in which they are used.[40] Thus, the word "threat" does not stand alone. It must be read in the context of the statutory meaning of the word "coerce" or "coercion" as that term is defined in the Penal Code, section 1.07(a)(9). To require further definition of the term "coerce," as Appellant apparently argues should have been done, is to reach the point of defining definitions.

Accordingly, section 36.03 cannot be said to be substantially overbroad judged in relation to the statute's plainly legitimate sweep.[41] Moreover, the challenged statute is presumed valid if "closely drawn to match a sufficiently important interest."[42]

Coercion occurs when a person illegally threatens to do indirectly what he does not have the power to do directly.[43] No public official can hide under the cloak of official authority or the First Amendment in order to commit the crime of

---

[39] *Olivas*, 203 S.W.3d at 345–46.
[40] *See Gant v. State*, 814 S.W.2d 444, 454 (Tex. App.—Austin 1991, no pet.).
[41] *Ellis*, 309 S.W. at 91.
[42] *Id.*
[43] *See Roberts v. State*, 278 S.W.3d at 790 (court rejects overbreadth and vagueness challenges; attorney's otherwise legitimate right to file lawsuit still actionable under criminal "coercion" statute); *Sanchez,* 995 S.W.2d at 687 (court rejects overbreadth and vagueness challenges; threats have no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money).

coercion of a public servant and abuse of office, nor should he be able to assert that statutory definitions of criminal coercive conduct are overbroad. Threats of this nature are simply not protected by the First Amendment and are not unconstitutional in their clarity.[44] The statute puts limits on a person's conduct, which must necessarily include any person's (including a public official's) exercise of his duties under his employment. Coercion occurs when a public official illegally threatens to do indirectly what he does not have the power to do directly. Whether the underlying action is within the public official's power (lawful) or unlawful and criminally coercive, the statute is designed to protect the integrity of the political process and not the end result.

### 2. The statute is not subject to strict scrutiny because it does not distinguish between favored and disfavored speech.

Before any level of judicial scrutiny is applied to determine the constitutionality of a statute under the First Amendment, the challenger must clear three preliminary hurdles: 1) demonstrate that the regulated activity has an expressive component deserving of protection, 2) demonstrate that the speaker is protected under the First Amendment, and 3) demonstrate that the speech should be afforded a high degree of protection. Even if all of such hurdles were overcome, only content-based regulation on *private citizens' speech* would be held

---

[44] *See Roberts*, 278 S.W.3d at 790; *Sanchez*, 995 S.W.2d at 687.

presumptively invalid and subject to strict scrutiny.[45] Moreover, strict scrutiny is applied in facial challenges only to laws that distinguish between favored and disfavored speech based on the ideas expressed.[46]

Appellant cuts a wide swath in asserting that merely because the statute at issue addresses speech, it necessarily is subject to strict scrutiny review. Such is not in accord with precedent. Appellant fails to address precedent that addresses private versus public servant speech, and favored versus disfavored expression. The "Coercion of a Public Servant" statute does not make the favored/disfavored expression distinction that would raise constitutional concern. Also, Appellant fails to demonstrate why he should receive the benefit of heightened scrutiny where the statute at issue is being enforced against a public servant's threat. Appellant is not entitled to a presumption of invalidity subject to the most severe judicial scrutiny. Appellant's argument that § 36.03(a)(1) and § 1.07(a)(9)(F) prohibit and burden *core political speech* and, thus, should be analyzed under exacting scrutiny, is unfounded. Core political speech involves "interactive communication concerning political change."[47] The First Amendment affords the broadest protection to this type of political expression in order "to assure [the] unfettered interchange of ideas

---

[45] *See*, *e.g.*, *Virginia v. Black*, 538 U.S. 343, 361 (2003).
[46] *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000); *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013).
[47] *See Meyer v. Grant*, 486 U.S. 414, 421–22 (1988).

for the bringing about of political and social changes desired by the people."[48] It would be an unreasonable and unwarranted stretch to find that the founders of our Constitution, our Legislature, and our courts should consider coercion and extortion, which § 36.03 proscribes, as interactive communication deserving constitutional protection. Moreover, Appellant failed to clear the substantial hurdles necessary to invoke such a level of scrutiny.

### 3. Even if heightened scrutiny were applied, "Coercion of a Public Servant" statute withstands that scrutiny.

Judge Richardson concluded that the Coercion of a Public Servant statute serves a compelling state interest to protect the integrity of the political process.[49] The State of Texas has a singular interest in intervening when public officials try to leverage the power of government for their personal or political whims. The State of Texas undoubtedly has a valid and substantial interest in self-regulation. There is also a close nexus between the compelling interest and the restriction. The statute does not substantially include innocent behavior or criminalize protected speech. Similar to the conduct in *Sanchez,* it criminalizes extortion ("either do what I want or else something bad will happen to you")[50] which is not protected expression.

---

[48] *See Roth v. United States*, 354 U.S. 476, 484 (1957).
[49] C.R. 477-78.
[50] *Sanchez*, 995 S.W.2d at 691–92 (Mansfield, J., concurring).

Moreover, the statute is narrowly drawn in order to include the abuse of public authority and to employ the least restrictive means to achieve its goal. The legislative exception under Section 36.03(c) provides a limitation that the daily operations of government negotiation are not criminalized. Furthermore, the statute only criminalizes two categories of coercion - physical threats and threats of official action. In *United States v. Kozminski* the Supreme Court wrestled with narrowing the definition of coercion as applied to a prosecution for involuntary servitude. Justice Brennan recognized that "certain psychological, economic, and social means of coercion can be just as effective as physical or legal means." But out of concerns for vagueness, the Court determined that the jury charge should have been limited to "the use or threatened use of physical or legal coercion."[51] These are *precisely* the narrow two categories—physical or legal coercion—defined in Section 1.07(a)(9). The Legislature could have chosen to criminalize conduct that influences a public servant as broadly as "duress, fraud, overreaching, harassment, intimidation, or undue influence."[52] Instead, it chose a substantially more narrow definition.

---

[51] *United States v. Kozminski*, 487 U.S. 931, 955 (1988).
[52] *See* TEX. PENAL CODE § 38.12(b) (Barratry and Solicitation of Professional Employment).

**II. The coercion statute provides adequate notice consistent with due process.**

Appellant asserts the face of the statute is unconstitutionally vague. An enactment is not vague merely because it is imprecise.[53] In drafting a criminal statute, there is an inevitable balance that legislators must make between drafting it "general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."[54] In determining whether a statute is unconstitutionally vague, a two-part inquiry is applied: (1) determine whether an ordinary law-abiding person receives sufficient information from the statute that his conduct risks violating the criminal law, and (2) determine whether the statute provides law enforcement with sufficient notice to avoid arbitrary or discriminatory enforcement.[55] In this regard, a statute is not required to be "mathematically precise; it need only give fair warning."[56] Notably, a statute is unconstitutionally vague "when no core of prohibited activity is defined."[57]

When a statute does not implicate constitutionally-protected conduct, a reviewing court should sustain the vagueness challenge only if the statute is

---

[53] *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971); *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir. 1983).
[54] *Colten v. Commonwealth of Kentucky*, 407 U.S. 104 (1972).
[55] *Grayned v. City of Rockford*, 408 U.S. 104 (1972).
[56] *Id.* at 110.
[57] *Briggs v. State,* 740 S.W.2d 803, 806 (Tex. Crim. App. 1987).

23

impermissibly vague in all its applications.[58] A person who engages in conduct that

is clearly proscribed cannot complain of the vagueness of the law as applied to the

conduct of others.[59]

In making its analysis, the same presumption of statutory validity is applied

when evaluating an overbreadth challenge.[60] The statutory words and phrases are

to be read in context, and construed according to the rules of grammar and

common usage.[61] Words and phrases that have acquired a particular meaning

through legislative definition are construed accordingly.[62] Importantly, a statute

must be upheld if a reasonable construction can be determined that will render it

constitutional.[63]

## A. The context of the statutory meaning of the word "coercion" provides fair warning.

Appellant relies primarily on the Waco Court of Appeals' decision in *State*

*v. Hanson*[64] to argue that the statute is unconstitutionally vague. The case is

distinguishable.

In *Hanson*, the public official charged with violating section 36.03 had the

lawful authority to take lawful action against the persons who were victimized by

---

[58] *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989).
[59] *Id.* (citing *Village of Hoffman Estates,* 455 U.S. 489, 494 (1982)).
[60] *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Duncantell,* 230 S.W.3d at 835; *Sanchez*, 995 S.W.2d at 683; *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991).
[61] TEX. GOV'T CODE ANN. § 311.011(a) (West 2005); *Sanchez*, 995 S.W.2d at 683.
[62] TEX. GOV'T CODE ANN. § 311.011(b) (West 2005).
[63] *Roberts* 278 S.W.3d at 778*; Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)
[64] *State v.* Hanson, 793 S.W.2d 270 (Tex. App.—Waco 1990, no pet.).

her threat to cut funding.[65] Bosque County could legally terminate funding of employees in the district attorney's office or district clerk's office, and Judge Hanson could legally request that the county attorney institute proceedings to revoke a misdemeanant's probation. That is, the act requested by the defendant as part of her threat was an act that was within the scope of the lawful authority that she, the defendant, otherwise had. In that instance, the Waco Court of Appeals found that it was impossible for Judge Hanson to predict that her threat was criminal, as she was demanding action that was within her purview to demand. Such is not the situation in the instant case, as then-Governor Perry did not have the legal authority to demand an elected district attorney's resignation.

But even the court in *Hanson* could not conclude that Section 36.03 was vague on its face. The context of Section 36.03 and the other statutes within Chapter 36 of the Penal Code focus on conduct to coerce a public official to act or violate their known duty when the actor has no control or authority to do so. This is the crux of two decisions by the Texas Court of Criminal Appeals.[66]

In *Board v. State,* the Court explained that the context of the terms "coercion" and "threat" provide sufficient notice because "the word 'threat' does not stand alone. It must be read in the context of the statutory meaning of the word

---

[65] *Id.* at 272.

[66] *See Board v. State*, 03-96-00024-CR, 1998 WL 271043 (Tex. App.—Austin May 29, 1998, pet. ref'd) (not designated for publication) & *Sanchez*, 995 S.W.2d at 677.

'coerce' or 'coercion' as that term is defined in Penal Code Section 1.07(a)(9)."[67] Otherwise, *no public official could ever be prosecuted because he could claim he didn't intend for his comments to be viewed as a threat*. This is precisely the harm—and the difficulty in prosecuting the harm—the the Legislature sought to remedy. Sections 6.02 and 6.03 of the Penal Code provide further clarification and notice in terms of what makes a potential act criminal in nature.[68] All of these statutes, when considered in the context of ordinary usage and definitions, prevent all persons, including a public official, from feigning ignorance that his threat was not intended to be criminally coercive.

## B. The Legislature intended to cover threats of lawful action.

In addressing statutes involving abusive practices and coercive actions taken by and against public officials, who better to understand the problems with the abuse of power in political office than elected officials themselves? Members of the Texas House, Texas Senate, and Office of the Governor all agreed in 1989 that while power dynamics are a necessity of politics, there must be boundaries.

The main text of Sections 36.01 and 36.03 of the Texas Penal Code have remained the same for over forty years, and each have included threats related to

---

[67] *Board*, 1998 WL 271043 at *6; *see also Sanchez*, 995 S.W.2d at 689 (phrase "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" a reasonably specific phrase for Due Process purposes).
[68] TEX. PENAL CODE ANN. § 6.03 (West 2011) (distinct, clear definitions of culpable mental states).

action taken by public servants.[69] Notably, however, the text of Section 36.03 has gone through extensive review, amendments, and proposed amendments during the past 20+ years.

On January 24, 1989 Representative Wolens filed House Bill 594 ("H.B. 594") to propose a two-word change to how cases would be prosecuted under Section 36.03.[70] The initial draft of the bill relating to the definition of "coercion" added the adverb "unlawfully" twice to Section 36.01(1):

> (1) "Coercion" means a threat, however communicated:
> (F) to <u>unlawfully</u> take or withhold action as a public servant, or to cause a public servant to <u>unlawfully</u> take or withhold action.[71]

Before being voted out of committee, the definition of what constitutes "coercion" was narrowed further. Representative Guerrero introduced a committee substitute for H.B. 594 adding the "same governing body" exception that can be found in the current version of Section 36.03.[72] During the 2nd Reading of the bill on the House floor, Representative Parker made two additional changes to C.S.H.B. 594:

1) He added Wolens' "unlawfully" language back into the definition of 'coercion' in Section 36.01(1)(F), Penal Code; and

2) He enlarged the scope of what constitutes an offense under Section 36.03 by adding that:

---

[69] *See* Exhibit A.
[70] *See* Exhibit B.
[71] *See* Exhibit B at A-8.
[72] *See* Exhibit B at A-6.

27

A person commits an offense if by means of coercion he influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty <u>or influences or attempts to influence a public servant to violate the public servant's known legal duty.</u>[73]

On April 27, 1989, H.B. 594 was passed by the Senate by a 31-0 vote. The bill became law.

But only for four years.

In 1993 the Penal Code was re-writen to create State Jail Felonies, and SB 1067 included an entire rewrite of the Penal Code. The original draft of SB 1067 left 36.01 and 36.03 untouched.[74] After S.B. 1067 passed the Senate, it was subject to 58 adopted amendments on the House floor during second reading. Two changes occurred. First, Amendment No. 28 by Naishtat would have limited prosecution of coercion of a public servant *only to the narrow category of bribery-type conduct* and not the broader version of extortionate conduct.[75] The Naishtat re-write of 36.03 was passed by the House.

---

[73] *See* Exhibit B at A-14.
[74] The enrolled version of SB 1067 is 475 pages long. The full legislative history is 4,395 pages long and can be found at: Legislative Reference Library of Texas, "SB 1067," *available at* http://www.lrl.state.tx.us/LASDOCS/73R/SB1067/SB1067_73R.pdf#page=1
The relevant pages are included in Exhibit D.
[75] *See* Exhibit C.

Because the bills passed by each chamber differed, a conference committee was formed to adjust the differences between the Senate and the House on S.B. 1067. This resulted in a second change to the statute. The House version eliminated the word "unlawfully" in the definition that had just been added several years before. A summary of the legislative changes to that one word are as follows:

| Action | History of "Unlawfully" |
| --- | --- |
| Rep. Wolens adds language in HB 594 | "Unlawfully" added to definition of coercion in 36.01(F) |
| Rep. Guerrero removes language in HB 594 | "Unlawfully" removed from to definition of coercion in 36.01(F) |
| Rep. Parker adds language in HB 594 | "Unlawfully" added to definition of coercion in 36.01(F) |
| Rep. Place consolidates definitions into one section of the Penal code and moves the definition of "coercion" to Section 1.07 | "Unlawfully" still in definition of coercion. |
| Rep. Place removes language in C.S.S.B. 1067[76] | "Unlawfully" removed from definition of coercion in 1.07(F) |

The Conference Committee accepted the definition of "coercion" without "unlawfully" *and* rejected Naishtat's changes to the statute. Ultimately, the Texas Legislature and the Texas Governor decided to approve the removal of the word "unlawfully" from the definition of "coercion," reject the proposed limitation of this statute to bribery, and continue to criminalize extortionate conduct. For a

---

[76] *See* Exhibit D.

29

period of time, the word *unlawfully* was in the definition of coercion. The effect of adding the word *unlawfully,* however, is that it would have drastically reduced the scope of public officials who could be prosecuted. Both the Legislative and Executive Branch rejected the interpretation that a public official must commit an illegal act as a prerequisite for prosecution of coercion of a public official, and intentionally removed the word from the definition. Otherwise, a public official could always hide behind a cloak of "official authority." Thus, the current statute was an intentional effort by our State governance to adequately define prohibited criminal conduct.

Elected officials in the legislative branch are the most knowledgeable participants in the market of political power. They are the best persons to regulate it. This is precisely why facial challenges to a statute should be difficult to mount successfully.[77] Often, such claims rest on speculation and exaggeration—such as in this facial challenge. While this statute has been the law for at least four decades there is no historical evidence of any chilling effect on any public officials' actions.

Our state officials passed a law to limit their own power.

---

[77] *See Santikos*, 836 S.W.2d at 633 ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. Since a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the appellant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.") (internal citations and quotations omitted).

**III.   District Court Properly Held As-Applied Challenges Not Cognizable in Pretrial Habeas Proceeding.**

### A. Appellant's Improper Reliance on Speculation.

The trial court properly determined that a pretrial writ is not the appropriate forum to decide whether Texas Penal Code Sections 39.02(a)(2) and 36.03(a)(1) are being unconstitutionally applied to Appellant.[78] This is not because these were simply labeled "as applied" challenges. The entire Application for Writ of Habeas Corpus is permeated with the assumption that Appellant is being prosecuted for statements made at a press conference and acts in conformity with those statements. But as the trial court explained, "The alleged and speculated upon facts are not properly before the court at this time, and the court has no authority at this stage to examine the evidence that was presented to the Grand Jury."[79] An "as-applied" challenge necessarily challenges the invocation of a criminal statute "as applied" to the particular facts of the instant case.

The district court in the instant case has not heard any testimony, admitted any evidence, nor taken judicial notice of any fact related to the substantive charges against Appellant. Even so, Appellant injects a number of proposed,

---

[78] Order Denying Defendant's Writ, p. 10 [C.R. 473].
[79] Order Denying Defendant's Writ, p. 5, fn. 3 [C.R. 468].

31

speculative facts in his writ application and brief. The State disagrees with assumptions made by Appellant in his brief and writ applications, but legal pleadings filed in habeas proceedings are not the place to present or litigate factual evidence. That is reserved for trial. The trial court properly denied addressing the "as applied" claims.

### B. "As Applied" Challenge Not Cognizable in Pretrial Habeas Review.

Appellant inaccurately argues that his claims are the "functional equivalent" of facial challenges.[80] The litmus test of an "as-applied" challenge is whether a person is arguing that the statute is being unconstitutionally applied to *this* defendant under *this* set of facts.[81] The district court correctly cited three different Court of Criminal Appeals opinions, each expressly prohibiting trial courts from considering the merits of an "as applied" challenge.[82] In *State ex rel. Lykos v. Fine,* the Court held that an "'as-applied' challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."[83] Similarly, in *Ex*

---

[80] Appellant's "as-applied" challenges are set forth in three sections of his appellate brief: Sections III, VI and VII. These will all be addressed in this section of the State's Brief.
[81] Order Denying Defendant's Writ, p. 9 [C.R. 472].
[82] Order Denying Defendant's Writ, p. 5 fn.4 [C.R. 468–69]; *Id.*, p. 6 [C.R. 469], citing *Lykos*, 330 S.W. 3d at 911; *Ellis*, 309 S.W.3d at 79; *Ex parte Weise,* 55 S.W. 3d 617, 620 (Tex. Crim. App. 2001).
[83] *Lykos*, 330 S.W.3d at 911.

*parte Ellis,* the Court held that pretrial habeas is an extraordinary remedy that may not be "misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage."[84] Finally, in *Ex parte Weise* contains the Court of Criminal Appeals explicitly pronounces: "We granted review on our own motion to decide whether a pretrial writ of habeas corpus may issue on the ground that a penal statute is being unconstitutionally applied because of the allegations in the indictment or information. We conclude that it may not."[85]

Appellant argues that he advances the same type of "as-applied-to-the-indictment challenge" as in *Ex parte Boetscher*. It is not. In *Ex parte Boetscher* the court did not analyze conduct about whether the defendant did or did not pay child support. Instead, it looked only to the *face of the statute* to find an equal protection clause violation:

> Unlike the previous statute, however, which increased the punishment to a felony for defendants who committed the offense in Texas *and then fled the state,* § 25.05(g)(2) provides a felony penalty for all defendants *who commit the offense while simply residing in another state.* The previous punishment classification scheme did not offend the equal protection clause, [], but the classification scheme in § 25.05 plainly implicates one of the basic rights of all Americans.[86]

---

[84] *Ellis*, 309 S.W.3d at 79.
[85] *Weise,* 55 S.W.3d at 620.
[86] *Ex parte Boetscher*, 812 S.W.2d 600, 603 (Tex. Crim. App. 1991) (citation omitted) (emphasis in original).

33

This was far closer to what we consider a facial challenge than an "as applied" challenge.

Similarly, Appellant advances that *Ex parte Gill* and *Ex parte Elliot* enable this Court to analyze separation of powers violations in pretrial habeas. But neither of these cases are the type of "as applied" challenges presented in Appellant's writ. *Ex parte Gill* was not an "as applied" challenge but a facial challenge to the bail statute, Article 17.151. *Ex parte Elliot* was not an "as applied" challenge but a facial challenge to the Texas Solid Waste Disposal Act. The facts in the cases are irrelevant in analyzing whether the Legislature has the power to pass the regulations. Appellant never asserts that the Texas Legislature lacks this authority; he just reiterates that the application of the law is inapplicable *as to him*.

### 1. The Claims Are Not Ripe For Review.

Although Judge Richardson and this Court may have a general idea of the facts of this case based on the indictment and the media interpretation of the events giving rise to the indictment, the State has more evidence to present. In civil proceedings, the theory behind the ripeness doctrine is straightforward—if plaintiff's injury is not concrete and depends on contingent, remote, or hypothetical facts, courts should avoid deciding the dispute. This theory has similarly been

34

applied to pretrial writs of habeas corpus.[87] Ripeness presents a threshold issue that implicates the court's subject matter jurisdiction, not its discretionary authority.[88]

Until the State has introduced or attempted to introduce evidence regarding the threats which Appellant claims would violate the Speech or Debate Clause, the separation of powers doctrine, or the constitutional application of the Abuse of Office statute to Appellant's conduct, these matters are not yet ripe for review.

### 2. There must first be facts in evidence before this Court can decide Appellant's "as applied" challenges.

Even facial challenges can be better addressed with *some* factual basis in the record. One of Appellant's central arguments is that he is being prosecuted for "core political speech." However, much of the body of First Amendment caselaw comes from the appellate court having the benefit of the words spoken, the context of the threat, and the relationship between the parties. This is especially true in cases involving indirect threats, retaliation, or extortion.

---

[87] *See*, *e.g.*, *Weise*, 55 S.W.3d at 621 (defendant's claim not cognizable in pretrial writ of habeas corpus because not yet ripe for review); *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006) (*in pari material* claim premature before State has had opportunity to develop complete factual record during trial); *Ex parte Cross*, 69 S.W.3d 810, 814 (Tex. App.—El Paso 2002, pet. ref'd) ("as applied" challenge to criminal trespass prosecution on First Amendment grounds not ripe for review); *Ex parte Tamez*, 4 S.W.3d 366, 368 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (as applied challenge to constitutionality of perjury statutes not ripe for adjudication when defendant had not yet been tried but claimed that unconstitutional harm was that trial court would be unable to issue fair jury instruction).

[88] *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Appellant has been charged with abuse of office and coercion of a public official. A trial on the merits is "the main event" in our American system of justice in which the prosecution and defense present evidence and do battle to reach a presumptively accurate and reliable result in each particular case.[89] At a trial on the merits, "[i]f a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection."[90] There is no evidence for the Court to review Appellant's claim that the two statutes are unconstitutional as applied to him.

The writ of habeas corpus is an extraordinary writ. The Texas Constitution establishes an appellate system and the highest courts in Texas have developed rules of appellate procedure where criminal matters can be reviewed and remedied. Because of our modern appellate system, writ applications should be restricted to only the issues which the ordinary appellate process is not capable of reviewing. "Neither a trial court nor an appellate court should entertain an application for writ of habeas corpus when there is an adequate remedy by appeal."[91] Moreover,

---

[89] *Lykos*, 330 S.W.3d at 919 (citing *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977).
[90] *Id.*
[91] *Ex parte Hopkins*, 610 S.W.2d 479, 480 (Tex. Crim. App. 1980); *Ex parte Powell*, 558 S.W.2d 480, 481 (Tex. Crim. App. 1977); *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978); *Ex parte Delbert*, 582 S.W.2d 145, 145 (Tex. Crim. App. 1979).

"pretrial habeas is unavailable when the resolution of a claim may be aided by the development of a record at trial."[92]

## C. All of Appellant's Remaining Claims Are "As Applied" Challenges.

Knowing that the Court of Criminal Appeals has repeatedly refused to consider the merits of an "as applied" challenge in pretrial habeas review, litigants have sought to stretch "as applied" challenges under the label of a "facial" challenge. Writing for a unanimous Court in *Ex parte Ellis*, Presiding Judge Keller explained that "appellants did not really advance a facial challenge, but advanced an 'as applied' claim that was disguised as a facial challenge. Addressing the 'as applied' substance of the claim resulted in a circumvention of the pretrial habeas cognizability limitations."[93] Appellant's writ application does not advance the "functional equivalent of a facial challenge." Judge Richardson properly treated them as "as-applied" challenges because they are "as-applied" challenges.

Lacking the facts at trial, Appellant refers to the "facts alleged in the indictment" and seeks to resolve an as-applied challenge on the face of the indictment alone. As beneficial as this perspective would be for the State, an indictment is not evidence:

---

[92] *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010); *see also Ex parte Smith*, 185 S.W.3d at 893.

[93] *Ellis*, 309 S.W.3d at 81; *see also Karenev v. State*, 281 S.W.3d 429, 441 (Tex. Crim. App. 2009) (Cochran, J. concurring) ("I think the court of appeals was mistaken in transforming appellant's subterranean sufficiency of evidence argument into a full-fledged First Amendment attack upon the facial constitutionality of the harassment statute.").

> If the introduction of the indictment constituted a prima facie case of guilt, then it would seem that the State would be justified before the jury in making out a prima facie case of murder in the first degree by simply introducing the indictment and resting its case, requiring thereby that the accused party should introduce evidence to disprove the finding of the grand jury. This under no authority would be correct.[94]

Under our rules, the fact that Appellant was indicted is not evidence. Neither are interpretations of the indictment by counsel, assumptions made in motions, or recitation of assumed "facts" in briefs. Lawyers cannot create facts through pleadings.

As a corollary, Petitioner cannot argue that allegations in an indictment provide facts for pretrial habeas relief. This tact was recently tried and rejected in *Ex parte Ragston*. *Ragston* involved an attempt to raise an "as-applied" challenge in a pretrial writ based on the holdings in *Roper v. Simmons* and *Miller v. Alabama*, two United States Supreme Court decisions restricting the types of punishments available for those under the age of 18.[95] The State conceded that Texas' sentencing statute would be unconstitutional in light of *Roper* and *Miller*.[96] However, the State argued and the court upheld that the complaint was not cognizable in an application for a pretrial writ of habeas corpus.[97] The only fact that needed to be addressed was Ragston's age, and the constitutional principle had

---

[94] *Ex parte Firmin*, 60 Tex.Crim. 368, 375 (Tex. Crim. App. 1910).
[95] *Ex parte Ragston,* 402 S.W.3d 472, 475 (Tex. App.—Houston [14th Dist.] 2013), citing *Roper v. Simmons*, 543 U.S. 551, 574–75 (2005); *Miller v. Alabama*, 132 S.Ct. 2455 (2012).
[96] *Ragston,* 402 S.W.3d at 475.
[97] *Id*. at 476.

already been settled by the Supreme Court. Yet, both the trial court and court of appeals properly denied the application for pretrial writ as the issue could be properly addressed on appeal if he was convicted. Any challenge in the writ that relies upon language in the indictment or media is inappropriate..

Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that, in its operation, the challenged statute was unconstitutionally applied to him; that it may be unconstitutional as to others is not sufficient, or relevant. [98]

Appellant heavily relies upon his role as Governor of the State of Texas—and the assumptions about why he is being prosecuted—to advance each of his claims:

1) Separation of powers
   -"By requiring the judiciary to scrutinize a gubernatorial veto, this prosecution unduly interferes. . ."[99]

   -"Allowing a criminal prosecution of a political decision where there is no allegation of bribery or demonstrable corruption. . ."[100]

2) Speech or Debate clause
   -"Count I is predicated upon a legislative act of Governor Perry—the veto—and Count II involves the Governor's alleged discussions with his staff regarding the anticipated legislative act and its announcement."[101]

---

[98] *See Santikos*, 836 S.W.2d at 633; *Parent v. State*, 621 S.W.2d 796, 797 (Tex. Crim. App. 1981).
[99] *Application for Writ*, [C.R. 21].
[100] C.R. 23.
[101] C.R. 28.

-"Should the face of the indictment not be sufficient to sustain this assertion, the Court should review the transcripts of the grand jury in camera."[102]

3) <u>Facial challenge to the constitutionality of Texas Penal Code § 36.03(a)(1) (Coercion of Public Servant or Voter)</u>
-"Core political speech, such as the veto and the alleged veto threat in this case, lies at the very heart of First Amendment protection."[103]

-"Even assuming (for purposes of argument only) that [Appellant] did in fact "threaten" a veto in this case, and even assuming that Lehmberg had resigned under such a threat, Texas courts have repeatedly held that resignation under such circumstances does not constitute 'duress.'"[104]

All of these claims are substantively "as-applied" challenges, carrying factual assumptions that Appellant is making to support his challenge. "If a claim designated as a facial challenge is in fact an as-applied challenge, courts should refuse to consider the merits of the claim."[105]

Thirty years ago, lawyers for Jim Mattox advanced the same arguments as Appellant now urges. Mattox was accused of threatening to delay and deny approval of municipal bonds that were within his power to approve as acting Attorney General.[106] In summarily dismissing his pretrial habeas corpus proceeding, which sought to sidestep a trial, the court of appeals treated the Attorney General the same as every other citizen: "Mattox does not assert any

---

[102] *Id.*
[103] C.R. 30.
[104] C.R. 35.
[105] *Ellis*, 309 S.W.3d at 80 (reversing Third Court of Appeals for improperly resolving "as applied" challenge on pretrial habeas review under auspices of facial challenge).
[106] Jim Mattox's case proceeded to jury trial, and a Travis County jury acquitted him of commercial bribery.

40

extraordinary interest that would justify the delay and judicial wheelspinning that would result were defendants authorized to institute pretrial collateral proceedings, complete with interlocutory appeals, to test the sufficiency of the allegations in a charging instrument."[107] The court explained that Mattox was legally entitled to challenge the sufficiency of the indictment in a motion to quash, and like every other defendant accused of a crime, should the motion be overruled and he be convicted, he could take the issue up on appeal.[108]

Moreover, "[h]abeas corpus is an extraordinary remedy and is available only when there is no other adequate remedy at law."[109] Neither a trial court nor an appellate court should entertain a petition for writ of habeas corpus when there is an adequate remedy by appeal.[110] The fact that the defendant has filed a Motion to Quash raising grounds identical to those in the writ of habeas corpus—the trial court granted relief on one of the grounds—is the best illustration why the remaining claims were properly denied at this point in the process. Because the issues raised by the writ are better addressed on direct appeal, Appellant has an adequate remedy at law. The trial court properly denied relief.

Appellant sought a declaratory judgment from the trial court that the Abuse of Office statute (Section 39.02) should not apply to his conduct. Judge Richardson

---

[107] *Ex parte Mattox*, 683 S.W.2d 93, 96 (Tex. App.—Austin 1984, pet. ref'd).
[108] *Id.*
[109] *Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007) (citing *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004)).
[110] *Weise*, 55 S.W.3d at 619.

properly refused to make this determination as the statute is constitutional.[111] Although construing a former version of Section 39.02, the court in *Margraves v. State* determined the statute was not unconstitutionally vague: "The statute requires that a public servant use government property only in ways that are authorized."[112] However, under Appellant's interpretation of the Rule of Lenity, it would be unfair to prosecute him for an illegal use of his veto because it has never been done before.

The Rule of Lenity is a rule of statutory interpretation—not one of interpreting a defendant's conduct. "When [the] choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."[113] Section 39.02 is clear and definite. As the Court of Criminal Appeals noted in *Cuellar v. State*, "Fortunately, Texas courts rarely need resort to the Rule of Lenity to construe its penal provisions. By and large, the Texas Legislature drafted the Texas Penal Code with clarity, precision, and straightforward, well-defined language."[114] There are limitless ways in which a public servant may use government property in unauthorized way. In this case, the State will prove that a coercive threat followed by a retaliatory action constitutes

---

[111] Order Denying Defendant's Writ, p. 2 [C.R. 464].
[112] *Margraves v. State*, 34 S.W.3d 912, 921 (Tex. Crim. App. 2000) (overruled on other grounds by *Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009)).
[113] *United States v. Bass*, 404 U.S. 336, 347 (1971).
[114] *Cuellar v. State*, 70 S.W.3d 815, 822 (Tex. Crim. App. 2002).

both Coercion of a Public Servant and Abuse of Office. The grand jury indicted Appellant, and Appellant has the absolute right to dispute whether or not his actions constitute a crime at trial. But this necessarily requires witnesses and evidence and, most importantly, context that can only happen at trial.

## IV. Separation of Powers Doctrine Allows Judicial Branch to Check Coercive Use of Executive Power.

Appellant seeks two extensions of law.

First, he asks that this court grant him more power. While arguing one side of the separation of powers doctrine, he seeks dismissal of the indictment because this branch may not scrutinize gubernatorial action. But Appellant further argues that he is entitled to legislative powers such as Speech or Debate privilege and legislative immunity—precisely the type of assumption of power the separation of powers doctrine protects against. Although Texas is a weak governor state, Appellant argues that it is the most powerful branch.

Second, Appellant argues that he has a right "not to be tried" akin to double jeopardy. The only possible source for this right would be the political question doctrine, and this is not a case involving political question. Appellant advocates that the separation of powers doctrine be both a shield and a sword.

The State posits that the judicial branch is the only proper division of government to resolve a criminal allegation that Appellant illegally abused his

43

power against a specific individual for an unlawful purpose. Applicant argues that allowing a criminal prosecution where there is no allegation of bribery undermines the basic structure of state government. Applicant's claim is that the indictment – not the Coercion of a Public Official statute – is unconstitutional. This is either an "as applied" challenge or, interpreted in the strongest light, a challenge to the trial court's jurisdiction. If either of these arguments were correct, the Legislature or the Texas Constitution would exempt a governor from prosecution.

The Texas separation of powers provision "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government."[115] The authority cited in Appellant's brief discusses the importance of the separation of powers doctrine as it pertains to legislative encroachment on the judicial branch. Appellant fails to cite any authority, however, of how a criminal investigation and an indictment against a public official is a violation of the separation of powers. In Appellant's view, he could never be prosecuted for a threat or promise made in connection with his power to veto. Surely, this cannot be true. Otherwise, every bribery or extortion prosecution would be barred by the separation of powers doctrine. If, for example, evidence is presented at trial

---

[115] *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990); *see also Langever v. Miller,* 124 Tex. 80, 76 S.W.2d 1025, 1035 (Tex. 1934) ("So important is this division of governmental power that it was provided for in the first section of the first article of the Constitution of the Republic of Texas, and alone it constituted article 2 of each succeeding Constitution.").

demonstrating that Appellant exchanged his power to veto for money, or Appellant vetoed funding of a special prosecution unit because the unit was investigating allegations of his own misdeeds, the judicial branch would unquestionably have the power to prosecute. Similarly, the Texas Constitution also allows the Governor to fill "all vacancies in State or district offices."[116] Like the veto power, this is a power exclusive to the Governor. If evidence was brought to light that the Governor was soliciting bribes to fill these positions would Appellant's separation of powers argument prohibit judicial intervention?

Here, the Legislature defined the crime and specifically delegated to the judicial branch the discretion to prosecute the crime. This is a proper delegation of constitutional authority. "[The] Legislative Branch is not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness of, and levying appropriate punishment upon, specific persons."[117]

In the same vein, Appellant also argues that this issue is a nonjusticiable political question. The argument is misplaced. The political question doctrine commonly arises when the judiciary is asked to intervene in the legislature's impeachment process.[118] The political question doctrine also arises when one

---

[116] TEX. CONST. art. IV, § 12.
[117] *United States v. Brown*, 381 U.S. 437, 445 (1965).
[118] *See Nixon v. United States,* 506 U.S. 224, 228 (1993) (Supreme Court declined to intervene and interpret whether full evidentiary impeachment hearing constituted a "trial" in the Senate).

45

branch of government seeks the judiciary to resolve a dispute within its own branch or with another branch.[119] In addition to being nonjusticiable political questions, these matters are often not ripe for review.

Appellant asserts the same separation of powers argument that Governor Mandel asserted when he was prosecuted for his official acts as governor of Maryland.[120] This argument was rejected. The United States Supreme Court rejected the same type of argument posed by a judge prosecuted for committing a crime in connection with his official duties:[121] "Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance." As noted by the Court, even if the complained-of act is an otherwise "lawful" act by a public official, can the act charged be considered lawful when he acted in direct violation of the spirit of the statute?

Again, the same argument made by Governor Blagojevich of Illinois was rejected:[122]

> Distilled to its essence, the Governor's position is that the constitutionality of his official actions is simply not subject to judicial

[119] *See Coleman v. Miller,* 307 U.S. 433, 436 (1939) (dispute within the state senate of Kansas about whether the lieutenant governor could cast the deciding vote in the senate); *Goldwater v. Carter*, 444 U.S. 996, 997 (1979) (political disagreement about whether the President could unilaterally terminate a treaty with Taiwan).
[120] *See United States v. Mandel*, 415 F.Supp. 997, 1003 (D.Md. 1976) (overruled on other grounds) (separation of powers argument rejected).
[121] *See Ex parte Virginia*, 100 U.S. 339 (1879).
[122] *See Jorgensen v. Blagojevich*, 811 N.E.2d 652 (Ill. 2004).

oversight. No Illinois court has ever so held. Such a claim is, in fact, incompatible with the principles of separation of powers and checks and balances that are the foundation for our tripartite system of government. The executive branch, no less than the legislative branch, is bound by the commands of our constitution. The judicial power of the State of Illinois is vested in the courts (Ill. Const.1970, art. VI, § 1), and it is the duty of the judiciary to construe the constitution and determine whether its provisions have been disregarded by either of the other branches of government. If officials of the executive branch have exceeded their lawful authority, the courts have not hesitated and must not hesitate to say so.

The separation of powers doctrine does not cloak a public official with immunity from prosecution for abusing his authority.

The instant case is not a political question, nor a matter of whether a veto is proper. It is a matter of whether Appellant committed criminal acts in abusing the power that had been bestowed upon him as governor. The grand jury applied the facts to the law and returned an indictment. Appellant argues he did not break the law. The State alleges he did. This is precisely why the justice system exists: to resolve these types of disputes.

Appellant's final argument that relief must be granted to avoid a "deleterious impact on the efficient operation of state government" should also be rejected. This same argument was raised – and rejected – by the United States Supreme Court in *Clinton v. Jones*.[123] In rejecting President Bill Clinton's request to temporarily stay

---

[123] *Clinton v. Jones*, 520 U.S. 681, 697–98 (1997) ("[P]etitioner contends that he occupies a unique office with powers and responsibilities so vast and important that the public interest

civil proceedings until he completed his term of office, the Supreme Court concluded "if Congress deems it appropriate to afford the President stronger protection, it may respond with appropriate legislation."[124] "The Federal District Court has jurisdiction to decide this case. Like every other citizen who properly invokes that jurisdiction, respondent has a right to an orderly disposition of her claims."[125]

The Texas Constitution could have provided an express provision that a governor is immune from prosecution during his term of office. The Texas Legislature could specifically exempt a governor from prosecution for Abuse of Office or Coercion of a Public Official. It has not done so. . Barring a specific prohibition, the separation of powers doctrine requires the judiciary branch to fulfill its constitutional duty under Article 5 of the Texas Constitution.

## V.     A Governor is Not Immune from Criminal Prosecution.

Appellant claims he is immune from prosecution because everything he and/or his staff said is privileged from prosecution under the Speech or Debate Clause of the Constitution and/or through the related doctrine of legislative immunity. The United States Supreme Court made it clear in stating "the

---

demands that he devote his undivided time and attention to his public duties. He submits that—given the nature of the office—the doctrine of separation of powers places limits on the authority of the Federal Judiciary to interfere with the Executive Branch that would be transgressed by allowing this action to proceed.").

[124] *Id*. at 709.

[125] *Id*. at 710.

immunities of the Speech or Debate Clause were not written into the Constitution simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators."[126] And it was particularly not intended to make legislators "super-citizens, immune from criminal responsibility."[127] Moreover, the text of the clause makes it evident that it was intended for legislative discourse, not executive vetoes.

The Speech or Debate Clause was intended to apply to legislators communicating with each other and their staffs about the legislative acts they were involved in considering. The instant case, conversely, focuses on a criminal threat made by a member of the executive branch to a public official of a different jurisdiction in an attempt to force that public official to resign. The criminal threat was not a part of a debate among legislators, and the State is not attempting to look behind any piece of legislation. Additionally, the facts at issue may prove to be statements made for political reasons, rather than in consideration of a legislative act, which would place it outside the purview of protection that the Speech or Debate Clause was designed to protect.[128]

---

[126] *United States v. Brewster*, 408 U.S. 501, 507 (1972).

[127] *Brewster*, 408 U.S. at 516 & 521 ("It can hardly be thought that the Speech or Debate Clause totally protects what the sentence preceding it has plainly left open to prosecution, i.e. all criminal acts.").

[128] *Brewster,* 408 U.S. at 512.

**A. Texas state Speech or Debate Privilege Narrower than federal Speech or Debate Privilege.**

The Texas Court of Criminal Appeals has analyzed the scope of the Texas Speech or Debate Clause only once. In *Mutscher v. State*,[129] two Members of the House of Representatives and a state employee were convicted of conspiracy to accept a bribe. The testimony at trial included evidence about bills presented at committee meetings, how bills were approved by the committee, and how bills were passed by the House.[130] The theory of the prosecution was that the two Members used their vote, influence and powers of their office to procure and assist in the passage of certain legislation.[131]

Prior to trial, the Members moved to quash the indictment on Speech or Debate privilege grounds.[132] The trial court overruled the motion prior to any evidence being produced.[133] On appeal, the Members of the Texas Legislature argued that the Speech or Debate provisions of the State and Federal Constitutions barred any inquiry into the vote of a legislator or the motivations behind that vote.[134] Unlike the federal constitution, the Texas Constitution has a specific provision directed against abuse of office by public officials. In denying Speech or Debate privilege for the Texas legislators accused of bribery, the Court cited

---

[129] *Mutscher v. State*, 514 S.W.2d 905 (Tex. Crim. App. 1974).
[130] *Mutscher*, 514 S.W.2d at 911.
[131] *Id.* at 909.
[132] *Id.* at 913.
[133] *Id.* at 914.
[134] *Id.*

Article XVI, Section 41 of the Texas Constitution. The court reasoned that this *specific* constitutional provision provides the mandate for prosecution of members of the Legislature, executive officials and judicial officers.[135] The court rejected the defendants' proposition that the *general* provisions of the Speech or Debate clause would bar prosecution.[136] Most significantly, the Court of Criminal Appeals decided *Mutscher* in 1974. The court had the benefit of two of the most important United States Supreme Court cases on this issue: *United States v. Johnson*[137] and *United States v. Brewster*.[138] The more prudent perspective is to acknowledge the Court of Criminal Appeals' interpretation of the Clause in 1974 *after* the seminal United States Supreme Court cases were decided in 1966 and 1972. Our Texas court explicitly rejected the broad application of the Speech or Debate Clause as advanced by the U.S. Supreme Court. Appellant's broad and dated application should equally be rejected.

In Texas, our constitutional Speech or Debate privilege cannot be viewed as a protective bar to criminal prosecution given our state's specific constitutional provision *requiring* prosecution of public officials. This interpretation is consistent with the Speech or Debate Clause protecting Members from *civil* liability, but is not the type of absolute protection posited by the Appellant.

---

[135] *Id.* at 915.
[136] *Id.*
[137] *United States v. Johnson*, 383 U.S. 169 (1966).
[138] *Brewster*, 408 U.S. at 501.

Appellant may respond that the crime of bribery is different than Abuse of Official Capacity or Coercion of a Public Servant, and that *Mutscher* should be read to restrict the Speech or Debate privilege only to bribery offenses. But the principle relied upon by the court was that a criminal act of bribery could not conceivably be interpreted as a legislative act.[139] The same principle is applicable to criminal threats and coercion. Additionally, such an argument would still not explain how a *governor* would be entitled to assert the Speech or Debate privilege when the court read the provision so narrowly for two members of the Legislature. Further, Article XVI, Section 41 is incredibly broad. It reaches conduct far beyond the vagueness complained about in Appellant's writ, such as "indirect testimonials," "privileges," and "personal advantages."[140] It even criminalizes "implied" conduct.[141] Moreover, the bribery statute cited in *Mutscher* was recodified from Article 159 of Vernon's Annotated Penal Code to Section 36.0**2** of the Texas Penal Code. The Governor is indicted for violating Section 36.0**3** of the Texas Penal Code. The court's analysis in *Mutscher* would apply to the offenses charged.

After analyzing *Brewster*, the court held that illegal conduct is not part of the legislative process and is not deserving of privilege.[142] The trial court allowed

---

[139] *Mutscher*, 514 S.W.2d at 915.
[140] TEX. CONST. art. XVI, § 41.
[141] *Id*.
[142] *Mutscher*, 514 S.W.2d at 905.

legislative acts of the defendant to come into evidence.[143]

**B. The Speech or Debate Privilege applies to Members of the Legislature, not a Governor.**

**1. No governor ever has been afforded Speech or Debate privilege or legislative immunity from criminal prosecution.**

In 1976, Governor Marvin Mandel of Maryland filed a motion to dismiss his indictment arguing that he was entitled to invoke the doctrine of legislative immunity as a bar to prosecution.[144] Governor Mandel argued that "the Maryland Constitution allocates to him as Governor certain legislative functions, among them the discretionary power to recommend legislative matters for the consideration of the General Assembly and the power to approve and veto bills passed by the legislature."[145] Because he participates in the legislative process, Governor Mandel argued that he was entitled to invoke legislative privilege to forbid inquiry into his legislative acts or the motivation behind them.[146] He further argued that the doctrine of legislative immunity should bar the prosecution of his case.[147]

The trial court denied Governor Mandel's motion to dismiss and rejected his

---

[143] *Id.*

[144] The trial court addressed this argument in two separate opinions: *United States v. Mandel*, 415 F.Supp. 997 (D.Md. 1976) (March 31, 1976 opinion) and *United States v. Mandel*, 415 F.Supp. 1025, 1026–27 (D.Md. 1976) (May 4, 1976 supplemented opinion).

[145] *Mandel*, 415 F.Supp. at 1030.

[146] *Mandel*, 415 F.Supp. at 1030–1031.

[147] *Mandel*, 415 F.Supp. at 997.

claim for legislative immunity:[148]

> [A] criminal prosecution of a chief executive officer based on that officer's legislative acts does not threaten the independence of the legislature. No legislator is here being called upon to explain his acts before a 'hostile judiciary' as a consequence of a prosecution brought by an 'unfriendly executive'; no acts of any legislator or of the legislature itself are being called into question. The only alleged legislative acts before the Court are those of the Governor.

> That is not to say, of course, that exposing the executive to criminal liability for his legislative acts does not indirectly affect the legislative process; it is merely to say that it does not interfere with the *due functioning* of the legislative process, and that it does not threaten the *independence* of the legislature.

Similarly, when Governor Rod Blagojevich tried this same argument in defense of a civil suit that arose in conjunction with his federal criminal prosecution, the Seventh Circuit Court of Appeals flatly rejected his argument:[149]

> The state constitution's speech-and-debate provision is limited by its terms to members of the Illinois General Assembly and is plainly inapplicable to Blagojevich. The same would be true of the U.S. Constitution's Speech or Debate Clause, which applies only to legislators and their aides.[150]

> In the history of Speech or Debate clause jurisprudence, the privilege has not

---

[148] *Mandel*, 415 F.Supp. at 1031 (citation omitted) (emphasis added).

[149] *Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 531 (7th Cir. 2011).

[150] In this case, the court found that Blagojevich was entitled to legislative immunity based upon federal common law. Judge Posner wrote a lengthy dissent. Citing *U.S. v. Gillock*, Judge Posner observed that under federal common law of legislative immunity for state officials, criminal prosecution is not barred. *Empress Casino*, 638 F.3d at 543. Thus, he suggested certifying the question of whether the common law of official immunity in Illinois should permits a suit to go forward against a governor when the suit is based on his performing a legislative act for a criminal purpose to the Supreme Court of Illinois. *Id*. at 544.

been afforded to every legislator who raised it. But in nearly every single federal case cited by Appellant it is a member of the legislature who claims the Speech or Debate privilege.[151] The defendants and parties listed are exclusively members of the legislative branch. This is why court opinions refer to the applicability of the Clause to "members" and "legislators."[152] In the history of the Speech or Debate clause jurisprudence, the privilege has never been extended to a governor.

### 2. The privilege does not extend to all legislative-related topics of conversation.

In *United States v. Gravel*, the Supreme Court held that a United States Senator had no testimonial privilege from being questioned by a federal grand jury about whether he distributed classified government documents because the communications were outside the scope of legislative activity.[153] The court also focused on whether the communication was "essential to the deliberations of the Senate" and whether the request by the grand jury would "threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to executive influence."[154]

Conversely, a governor may sign a bill into law, but a governor cannot introduce a bill, hold a committee hearing on a bill, or amend a bill if he wants to

---

[151] *See* Exhibit E.
[152] *U. S. v. Gillock*, 445 U.S. 360, 366 n.5 (1980) (" . . . benefits of the Federal Speech or Debate Clause, which by its terms applies only to 'Senators and Representatives'").
[153] *Gravel v. United States*, 408 U.S. 606, 624–625 (1972).
[154] *Id.* at 625.

alter it before signing it into law. He simply may sign the bill or veto it. Any communication with the governor is not as "essential part" of the process of a bill becoming a law. It is more similar to the administration of the law. Moreover, even where a member can assert the Speech or Debate privilege, it is limited to past legislative acts. "[I]t is clear from the language of the Clause that protection extends only to an act that has already been performed. A promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate.' Likewise, a *promise* to introduce a bill is not a legislative act."[155] For example, in the trial of Governor Mandel, the trial court rejected the governor's argument that the privilege applied to any and all discussion relative to his actions.[156]

### C. The common law doctrine of legislative immunity does not make a Texas governor above the law.

The Speech or Debate privilege is an evidentiary privilege that may be asserted in both civil and criminal complaints. Legislative immunity, however, prevents public officials from being held civilly liable for their official acts.

Appellant infers that legislative immunity and the Speech or Debate privilege are substantially the same, and that legislative immunity may apply to the instant case. The structure of his argument appears to have several steps:

---

[155] *United States v. Helstoski*, 442 U.S. 477, 490 (1979).
[156] *Mandel*, 415 F.Supp. at 1024.

1. Members of the legislature enjoy legislative immunity from civil suits;

2. One of the sources of legislative immunity is the Speech or Debate Clause Privilege;

3. A line-item veto is a legislative activity;

4. Governor enjoys legislative immunity for civil suits because his veto is a legislative activity;

5. Therefore, the Governor should also enjoy Speech or Debate Clause privilege because his veto is a legislative activity.

Appellant's flow is flawed.

Several factors have created confusion about the applicability of each. First, the two doctrines are similar in that both protect public officials from being compelled to testify about their past legislative acts. Second, the concepts are intertwined, and the terms are used interchangeably when invoked by a member of the legislature. "Despite the frequent invocation of the federal Speech or Debate Clause in *Tenney*, the Court has made clear that the holding was grounded on its interpretation of federal common law, not on the Speech or Debate Clause."[157] State courts in Illinois, Maryland and New York have also recognized a distinction.[158] Things are further complicated by the interpretation of federal vs. state common law. State courts may look to the federal interpretation of the Speech

---

[157] *Gillock*, 445 U.S. at 372 n.10.
[158] *Pulliam v. Allen*, 466 U.S. 522, 536–38 (1984); *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736–37 (1980).

or Debate Clause, but the process quickly becomes muddled when you combine the state common law on legislative immunity.

Characterizing a veto as a legislative act may be sufficient to prevent a governor from being deposed in a civil suit. But no court has ever held the civil immunity provides a privilege against criminal prosecution. Every United States Supreme Court that addresses legislative immunity in the context of the Speech or Debate privilege confirms: immunity is not a bar to criminal prosecution. Instead, the fact that the public official enjoys legislative immunity is precisely why criminal prosecution is the only avenue for justice.

In *United States v. Gravel*, the Supreme Court directly addressed this issue:

> Article I, s 6, cl. 1, as we have emphasized, does not purport to confer a general exemption upon Members of Congress from liability or process in criminal cases. Quite the contrary is true. While the Speech or Debate Clause recognizes speech, voting, and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts. If republication of these classified papers would be a crime under an Act of Congress, it would not be entitled to immunity under the Speech or Debate Clause. It also appears that the grand jury was pursuing this very subject in the normal course of a valid investigation.[159]

In *Gillock,* the Supreme Court held that "[t]he cases in this Court which have recognized an immunity from civil suit for state officials have presumed the existence of federal criminal liability as a restraining factor on the conduct of state

---

[159] *Gravel*, 408 U.S. at 627.

officials."[160] In *O'Shea v. Littleton* the Supreme Court explained:

> Whatever may be the case with respect to civil liability generally, . . . or civil liability for willful corruption, . . . we have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights. . . . *On the contrary, the judicially fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress . . . .'*[161]

The Supreme Court repeated this principle again in *Imbler v. Pachtman*.[162] Appellant provides no legal basis for departing from that long-established rule.[163]

The executive power of veto is powerful, but it cannot be the basis for immunity from prosecution for criminal acts committed in connection with his exercise of such veto. Because it is a specifically enumerated privilege for the legislative department, an expressly enumerated provision of the Texas Constitution is the only grounds for his right to assert that privilege. To hold

---

[160] *Gillock*, 445 U.S. at 372.

[161] *O'Shea v. Littleton*, 414 U.S. 488 (1974) (emphasis added) (citations omitted).

[162] *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) ("This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights…").

[163] *Hutchinson v. Proxmire*, 443 U.S. 111, 127–128 (1979) (speech or debate clause did not protect transmittal of defamatory material about wasteful government spending in press release issued by senator).

otherwise would be a violation of Texas' separation of powers clause.[164] The text of the Constitution underlies the practical reality: the Speech or Debate privilege is simply not applicable to the work performed by a governor. The Texas Constitution provides this privilege to "members." While the Lt. Governor is an active member of the Senate and would be afforded the Speech or Debate privilege, the governor is not and should not be afforded the privilege.

---

[164] *See* TEX. CONST. art. II, § 1 ("[N]o person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.").

## PRAYER

Appellee respectfully prays that this Court uphold the constitutionality of the statutes at issue and the trial court's decision.

Respectfully submitted,

/s/ *Michael McCrum*
MICHAEL MCCRUM
State Bar No. 13493200
District Attorney Pro Tem
Travis County, Texas
700 N. St. Mary's St., Suite 1900
San Antonio, TX 78205
Telephone: (210) 225-2285
Facsimile: (210) 225-7045
michael@mccrumlegal.com

/s/ *David M. Gonzalez*
DAVID M. GONZALEZ
Assistant District Attorney Pro Tem
Travis County, Texas
206 East 9th Street, Suite 1511
Austin, Texas 78701
Telephone: (512) 381-9955
Facsimile: (512) 485-3121
david@sg-llp.com

**ATTORNEYS FOR
THE STATE OF TEXAS**

61

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document was generated by a computer using Microsoft Word which indicates that the word count of this document except the following: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix is 14,899 per Tex.R.App. P. 9.4(i).

/s/ *Michael McCrum*
Michael McCrum

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2015, a true and correct copy of Appellee's Brief was served on the following parties in accordance with the requirement of the Texas Rules of Appellate Procedure via electronic filing:


David L. Botsford
Botsford & Roark
1307 West Ave.
Austin, TX 78701
(512) 479-8040 Facsimile
dbotsford@aol.com

Thomas R. Phillips
Baker Botts, L.L.P.
98 San Jacinto Blvd., Ste. 1500
Austin, TX 78701
(512) 322-8363 Facsimile
Tom.phillips@bakerbotts.com

Anthony G. Buzbee
The Buzbee Law Firm
600 Travis St., Ste. 7300
Houston, TX 77002
(713) 223-5909 Facsimile
tbuzbee@txattorneys.com


 /s/ *Michael McCrum*
Michael McCrum

# EXHIBIT A

TEX. PENAL CODE § 36.01
TEX. PENAL CODE § 36.03

1973 Version

36.10. Defenses.

TITLE 8. OFFENSES AGAINST THE STATE AND PUBLIC ADMINISTRATION

CHAPTER 36. BRIBERY AND CORRUPT INFLUENCE

Sec. 36.01. DEFINITIONS. In this chapter:

(1) "Coercion" means a threat, however communicated:

(A) to commit any offense;

(B) to inflict bodily injury on the person threatened or another;

(C) to accuse any person of any offense;

(D) to expose any person to hatred, contempt, or ridicule;

(E) to harm the credit or business repute of any person; or

(F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

(2) "Custody" means:

(A) detained or under arrest by a peace officer; or

(B) under restraint by a public servant pursuant to an order of a court.

(3) "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant authorized by law to take statements under oath.

(4) "Party official" means a person who holds any position or office in a political party, whether by election,

appointment, or employment.

(5) "Vote" means to cast a ballot in an election regulated by law.

Sec. 36.02. BRIBERY. (a) A person commits an offense if he offers, confers, or agrees to confer any benefit on a public servant, party official, or voter:

(1) with intent to influence the public servant or party official in a specific exercise of his official powers or a specific performance of his official duties; or

(2) with intent to influence the voter not to vote or to vote in a particular manner.

(b) A public servant or party official commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will be influenced in a specific exercise of his official powers or a specific performance of his official duties.

(c) A voter commits an offense if he knowingly accepts or agrees to accept any benefit on the representation or understanding that he will not vote or will vote in a particular manner.

(d) An offense under this section is a felony of the third degree unless committed under Subsection (b) of this section, in which event it is a felony of the second degree.

Sec. 36.03. COERCION OF PUBLIC SERVANT OR VOTER. (a) A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific

performance of his official duty; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

(b) An offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree.

Sec. 36.04. IMPROPER INFLUENCE. (a) A person commits an offense if he privately addresses a representation, entreaty, argument, or other communication to any public servant who exercises or will exercise official discretion in an adjudicatory proceeding with an intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law.

(b) For purposes of this section, "adjudicatory proceeding" means any proceeding before a court or any other agency of government in which the legal rights, powers, duties, or privileges of specified parties are determined.

(c) An offense under this section is a Class A misdemeanor.

Sec. 36.05. TAMPERING WITH WITNESS. (a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding or coerces a witness or prospective witness in an official proceeding:

(1) to testify falsely;

(2) to withhold any testimony, information, document, or thing;

# EXHIBIT B

TEX. PENAL CODE § 36.01
TEX. PENAL CODE § 36.03

1989 Revisions

1989 FEB 14  PM 4: 21

HOUSE OF REPRESENTATIVES

I certify that the attached is a true and correct copy of ___HB#594___, which was filed of record on ___JAN 24 1989___ and referred to the committee on:

_State Affairs_

Betty Murray

Chief Clerk of the House

FILED JAN 24 1989

H.B. No. 594

By _____

## A BILL TO BE ENTITLED

### AN ACT

relating to the definition of "coercion" for the purpose of prosecution of offenses against public administration.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.   Section 36.01(1), Penal Code, is amended to read as follows:

(1)  "Coercion" means a threat, however communicated:

(A)  to commit any offense;

(B)  to inflict bodily injury on the person threatened or another;

(C)  to accuse any person of any offense;

(D)  to expose any person to hatred, contempt, or ridicule;

(E)  to harm the credit or business repute of any person; or

(F)  to unlawfully take or withhold action as a public servant, or to cause a public servant to unlawfully take or withhold action.

SECTION 2.   (a)  The change in law made by this Act applies only to an offense committed on or after the effective date of this Act.   For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b)  An offense committed before the effective date of this

71R1954 GWK-D                    1

A-6

Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 3. This Act takes effect September 1, 1989.

SECTION 4. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

By Wolens                                                 H.B. No. 594

Substitute the following for H.B. No. 594:

By Guerrero                                           C.S.H.B. No. 594

A BILL TO BE ENTITLED

AN ACT

relating to the prosecution of offenses involving coercion of a public servant.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 36.03, Penal Code, is amended by adding Subsection (c) to read as follows:

(c) It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body. For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

SECTION 2. (a) The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 3. This Act takes effect September 1, 1989.

SECTION 4. The importance of this legislation and the

71R3663 GWK-F                          1

crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

2

# COMMITTEE REPORT

2/20/89
(date)

**The Honorable Gib Lewis**
**Speaker of the House of Representatives**

Sir:

We, your COMMITTEE ON STATE AFFAIRS,

to whom was referred _____HB 594_____ have had the same under consideration and beg to report
(measure)

back with the recommendation that it

( ) do pass, without amendment.
( ) do pass, with amendment(s).
(✓) do pass and be not printed; a Complete Committee Substitute is recommended in lieu of the original measure.

A fiscal note was requested. (✓) yes  ( ) no          An actuarial analysis was requested. ( ) yes  (✓) no

An author's fiscal statement was requested. ( ) yes  (✓) no

A criminal justice policy impact statement was prepared. ( ) yes  (✓) no

A water development policy impact statement was requested. ( ) yes  (✓) no

( ) The Committee recommends that this measure be sent to the Committee on Local and Consent Calendars for placement on the ( ) Local, ( ) Consent, or ( ) Resolutions Calendar.

This measure ( ) proposes new law.    (✓) amends existing law.

House Sponsor of Senate Measure _____

The measure was reported from Committee by the following vote:

| | AYE | NAY | PNV | ABSENT |
|---|---|---|---|---|
| Laney, Ch. | ✓ | | | |
| Guerrero, V.C. | ✓ | | | |
| Tallas, C.B.O. | | | | ✓ |
| Cain | | | | ✓ |
| Gibson | ✓ | | | |
| Harrison | ✓ | | | |
| Hilbert | ✓ | | | |
| Hury | ✓ | | | |
| Jones | ✓ | | | |
| Oakley | ✓ | | | |
| Perez | ✓ | | | |
| Saunders | ✓ | | | |
| Smith, T. | | | | ✓ |
| | | | | |
| | | | | |

Total

__10__ aye
__0__ nay
__0__ present, not voting
__3__ absent

CHAIRMAN

Deborah K. Wall
COMMITTEE COORDINATOR

**A-10**

HB 594

By Wolens

## BILL ANALYSIS

### Background

In response to budget cuts imposed by certain county commissioners, a grand jury investigated the commissioners to determine if they had broken laws prohibiting coercion of public officials.

### Purpose

To protect public officials from criminal prosecution arising from the execution of their legal duties.

### Section by Section Analysis

**SECTION 1**      Amends Section 36.03, Penal Code. A member of a governing body of a governmental entity may not be prosecuted for the coercion of a public servant if he is acting in an official capacity for the governmental entity.

**SECTION 2**      Limits changes to the act to those offenses occurring on or after the effective date.

**SECTION 3**      Effective date.

**SECTION 4**      Emergency clause.

### Rulemaking Authority

It is the opinion of the committee that this bill delegates no rulemaking authority to any state officer, agency, institution, or department.

### Summary of Committee Action

Public notice was posted on February 15, 1989 and a public hearing was held on February 20, 1989.

Craig Pardue, representing Dallas County, testified for HB 594.

A complete substitute of HB 594 was adopted.

Jim Allison, representing the County Judges & Commissioners Association of Texas, testified for CSHB 594.

The Committee voted to report HB 594 to the full House, with a complete substitute, with a recommendation it do pass by a record vote of 10 ayes, no nays, no PNV, and 3 absent.

#### Comparison with Original Bill

The substitute retains the intent of the bill but makes a substantive amendment to the mechanics of its implementation. The authority of a member of a governing body to carry out his lawful duties will be treated as an exception to the definition of "coercion" under section 36.03 of the Penal Code.

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 21, 1989

TO:   Honorable James E. "Pete" Laney, Chair    In Re:  Committee Substitute for
      Committee on State Affairs                         House Bill No. 594
      House of Representatives
      Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on Committee Substitute for House
Bill No. 594 (relating to the prosecution of offenses involving coercion of a
public servant) this office has determined the following:

No fiscal implication to the State or units of local government is
anticipated.

Source:  LBB Staff:  JO, JWH, AL, LV

71FCSHB594

**A-12**

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 15, 1989

TO:  Honorable James E. "Pete" Laney, Chair       In Re:  House Bill No. 594
     Committee on State Affairs                    By:  Wolens
     House of Representatives
     Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 594 (relating to the definition of "coercion" for the purpose of prosecution of offenses against public administration) this office has determined the following:

No fiscal implication to the State or units of local government is anticipated.

Source: LBB Staff:  JO, JWH, AL, CKM

71FHB594

*ǘ*

A-13

**ADOPTED**

MAR 14 1989

*Betty Murray*
Chief Clerk
House of Representatives

AMENDMENT NO. 1                    BY *Parker*

Amend C.S.H.B. No. 594 by inserting new Sections 2 and 3 of the bill to read as follows and renumbering existing Sections 2 and 3 and subsequent sections accordingly:

SECTION 2.    Section 36.01(1), Penal Code, is amended to read as follows:

(1)  "Coercion" means a threat, however communicated:

(A)  to commit any offense;

(B)  to inflict bodily injury on the person threatened or another;

(C)  to accuse any person of any offense;

(D)  to expose any person to hatred, contempt, or ridicule;

(E)  to harm the credit or business repute of any person; or

(F)  to unlawfully take or withhold action as a public servant, or to cause a public servant to unlawfully take or withhold action.

SECTION 3.    Section 36.03(a), Penal Code, is amended to read as follows:

(a)  A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known

71R6688 GWK-F                    1

A-14

legal duty; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

**ADOPTED** as amended

MAR 14 1989

*Chief Clerk*
*House of Representatives*

By Wolens

Substitute the following for H.B. No. 594:

By _____

H.B. No. 594

C.S.H.B. No. 594

A BILL TO BE ENTITLED

AN ACT

relating to ~~the prosecution of~~ offenses involving coercion of a public servant.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.   Section 36.03, Penal Code, is amended by adding Subsection (c) to read as follows:

(c)  It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body. For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

SECTION 2.   (a)  The change in law made by this Act applies only to an offense committed on or after the effective date of this Act.  For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b)  An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 3.  This Act takes effect September 1, 1989.

SECTION 4.   The importance of this legislation and the

71R3663 GWK-F

1

crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

ENGROSSED
SECOND READING

By Wolens                                                H.B. No. 594

A BILL TO BE ENTITLED

AN ACT

relating to offenses involving coercion of a public servant.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 36.03, Penal Code, is amended  by  adding Subsection (c) to read as follows:

(c)  It  is  an  exception  to  the application of Subsection (a)(1) of this section that the person who influences  or  attempts to  influence  the public servant is a member of the governing body of a governmental entity, and that the action  that  influences  or attempts  to  influence  the  public  servant is an official action taken by the member of the governing body.  For  the  purposes  of this  subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

SECTION 2.  Section 36.01(1), Penal Code, is amended to  read as follows:

(1)  "Coercion"  means  a threat, however communicated:

(A)  to commit any offense;

(B)  to  inflict  bodily  injury  on  the  person threatened or another;

(C)  to accuse any person of any offense;

(D)  to expose any person to hatred, contempt, or ridicule;

(E)  to harm the credit or business repute of any person; or

1

**A-18**

(F) to <u>unlawfully</u> take or withhold action as a public servant, or to cause a public servant to <u>unlawfully</u> take or withhold action.

SECTION 3. Section 36.03(a), Penal Code, is amended to read as follows:

(a) A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty <u>or influences or attempts to influence a public servant to violate the public servant's known legal duty</u>; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

SECTION 4. (a) The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 5. This Act takes effect September 1, 1989.

SECTION 6. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

By Wolens                                                    H.B. No. 594

A BILL TO BE ENTITLED

AN ACT

relating to offenses involving coercion of a public servant.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 36.03, Penal Code, is amended  by  adding Subsection (c) to read as follows:

(c)  It  is  an  exception  to  the application of Subsection (a)(1) of this section that the person who influences  or  attempts to  influence  the public servant is a member of the governing body of a governmental entity, and that the action  that  influences  or attempts  to  influence  the  public  servant is an official action taken by the member of the governing body.   For  the  purposes  of this  subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

SECTION 2.  Section 36.01(1), Penal Code, is amended to  read as follows:

(1)  "Coercion"  means  a threat, however communicated:

(A)  to commit any offense;

(B)  to  inflict  bodily  injury  on  the  person threatened or another;

(C)  to accuse any person of any offense;

(D)  to expose any person to hatred, contempt, or ridicule;

(E)  to harm the credit or business repute of any person; or

(F) to <u>unlawfully</u> take or withhold action as a public servant, or to cause a public servant to <u>unlawfully</u> take or withhold action.

SECTION 3.    Section 36.03(a), Penal Code, is amended to read as follows:

(a)  A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty <u>or influences or attempts to influence a public servant to violate the public servant's known legal duty</u>; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

SECTION 4.    (a)    The change in law made by this Act applies only to an offense committed on or after the effective date of this Act.  For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 5.    This Act takes effect September 1, 1989.

SECTION 6.    The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

2

A-21

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 21, 1989

TO:    Honorable James E. "Pete" Laney, Chair    In Re:    Committee Substitute for
        Committee on State Affairs                             House Bill No. 594
        House of Representatives
        Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on Committee Substitute for House Bill No. 594 (relating to the prosecution of offenses involving coercion of a public servant) this office has determined the following:

    No fiscal implication to the State or units of local government is anticipated.


Source:  LBB Staff:  JO, JWH, AL, LV

71FCSHB594

**A-22**

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 15, 1989

TO:     Honorable James E. "Pete" Laney, Chair          In Re:  House Bill No. 594
        Committee on State Affairs                      By:  Wolens
        House of Representatives
        Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 594 (relating to the definition of "coercion" for the purpose of prosecution of offenses against public administration) this office has determined the following:

        No fiscal implication to the State or units of local government is anticipated.


Source:  LBB Staff:  JO, JWH, AL, CKM

71FHB594

**A-23**

# REQUEST FOR LOCAL & UNCONTESTED CALENDAR
## PLACEMENT

Hon. Bill Sims, Chairman
Administration Committee

Sir:

Notice is hereby given that __HB 594__ , by: __NOLENS/MONTFORD__ ,
was heard by the Committee on __STATE AFFAIRS__ on __4-19__, 19__89__
and reported out with the recommendation that it be placed on the Local and Uncontested
Calendar.

_Morris Wilkes_
Clerk of the reporting committee

**IMPORTANT**:  A COPY OF THIS FORM MUST BE ATTACHED TO A PRINTED COPY OF THE BILL OR RESOLUTION, WHICH ALONG WITH 14 ADDITIONAL COPIES OF THE BILL OR RESOLUTION SHOULD BE DELIVERED TO THE OFFICE OF THE COMMITTEE ON ADMINISTRATION, ROOM 419.  PLEASE CALL 3-0350 IF YOU HAVE ANY QUESTIONS.  DEADLINE FOR SUBMITTING BILLS FOR THE LOCAL CALENDAR IS 5:00 P.M. FRIDAY.

Paper clip the original to the bill; retain one copy for reporting committee files; deliver one copy to the bill sponsor.

A-24

# SENATE FAVORABLE COMMITTEE REPORT

Lt. Governor William P. Hobby
President of the Senate

April 19, 1989 - 3:20pm
(date)/(time)

Sir:

We, your Committee on __STATE AFFAIRS__ to which was referred __HB 594__ by __WOLENS__ have on __4/19__, 19__89__, had the same
(measure)        (sponsor)              (hearing date)

under consideration and I am instructed to report it back with the recommendation (s) that it

(✓) do pass and be printed

( ) do pass and be ordered not printed

(✓) and is recommended for placement on the Local and Uncontested Bills Calendar.

A fiscal note was requested. (✓) yes ( ) no

A revised fiscal note was requested. ( ) yes (✓) no

An actuarial analysis was requested. ( ) yes (✓) no

Considered by subcommittee. ( ) yes (✓) no

Senate Sponsor of House Measure __MONTFORD__

The measure was reported from Committee by the following vote:

|  | YEA | NAY | PNV | ABSENT |
|---|---|---|---|---|
| Montford, Chairman | ✓ | | | |
| Henderson, Vice Chairman | | | | ✓ |
| Armbrister | ✓ | | | |
| Caperton | ✓ | | | |
| Edwards | ✓ | | | |
| Glasgow | ✓ | | | |
| Green | | | | ✓ |
| Harris | ✓ | | | |
| Leedom | ✓ | | | |
| Lyon | ✓ | | | |
| McFarland | ✓ | | | |
| Parmer | ✓ | | | |
| Washington | ✓ | | | |
| TOTAL VOTES | 11 | 0 | 0 | 2 |

COMMITTEE CLERK

CHAIRMAN

Paper clip the original and one copy of this form to the original bill and retain one copy for your file.

A-25

By: Wolens (Senate Sponsor - Montford)  H.B. No. 594
(In the Senate - Received from the House March 16, 1989; March 20, 1989, read first time and referred to Committee on State Affairs; April 20, 1989, reported favorably by the following vote: Yeas 11, Nays 0; April 20, 1989, sent to printer.)

COMMITTEE VOTE

|  | Yea | Nay | PNV | Absent |
|---|---|---|---|---|
| Montford | x | | | |
| Henderson | | | | x |
| Armbrister | x | | | |
| Caperton | x | | | |
| Edwards | x | | | |
| Glasgow | x | | | |
| Green | | | | x |
| Harris | x | | | |
| Leedom | x | | | |
| Lyon | x | | | |
| McFarland | x | | | |
| Parmer | x | | | |
| Washington | x | | | |

A BILL TO BE ENTITLED
AN ACT

relating to offenses involving coercion of a public servant.
BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
SECTION 1.  Section 36.03, Penal Code, is amended by adding Subsection (c) to read as follows:
(c)  It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body.  For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.
SECTION 2.  Section 36.01(1), Penal Code, is amended to read as follows:
(1)  "Coercion" means a threat, however communicated:
(A)  to commit any offense;
(B)  to inflict bodily injury on the person threatened or another;
(C)  to accuse any person of any offense;
(D)  to expose any person to hatred, contempt, or ridicule;
(E)  to harm the credit or business repute of any person; or
(F)  to unlawfully take or withhold action as a public servant, or to cause a public servant to unlawfully take or withhold action.
SECTION 3.  Section 36.03(a), Penal Code, is amended to read as follows:
(a)  A person commits an offense if by means of coercion he:
(1)  influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty; or
(2)  influences or attempts to influence a voter not to vote or to vote in a particular manner.
SECTION 4.  (a)  The change in law made by this Act applies only to an offense committed on or after the effective date of this Act.  For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.
(b)  An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.
SECTION 5.  This Act takes effect September 1, 1989.

1

A-26

SECTION 6. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

* * * * *

Austin, Texas
April 20, 1989

Hon. William P. Hobby
President of the Senate

Sir:

We, your Committee on State Affairs to which was referred H.B. No. 594, have had the same under consideration, and I am instructed to report it back to the Senate with the recommendation that it do pass and be printed.

Montford, Chairman

2

A-27

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

March 27, 1989

TO:    Honorable John T. Montford, Chairman    In Re:  House Bill No. 594,
        Committee on State Affairs                    as engrossed
        Senate Chamber                             By:  Wolens
        Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 594, as engrossed (relating to offenses involving coercion of a public servant) this office has determined the following:

    No fiscal implication to the State or units of local government is anticipated.

Source:  LBB Staff:  JO, JWH, AL, BL

71FHB594ae

**A-28**

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 21, 1989

TO:    Honorable James E. "Pete" Laney, Chair    In Re:    Committee Substitute for
        Committee on State Affairs                   House Bill No. 594
        House of Representatives
        Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on Committee Substitute for House Bill No. 594 (relating to the prosecution of offenses involving coercion of a public servant) this office has determined the following:

    No fiscal implication to the State or units of local government is anticipated.

Source:  LBB Staff:  JO, JWH, AL, LV

71FCSHB594

**A-29**

# LEGISLATIVE BUDGET BOARD

Austin, Texas

## FISCAL NOTE

February 15, 1989

TO:    Honorable James E. "Pete" Laney, Chair    In Re:  House Bill No. 594
       Committee on State Affairs              By:  Wolens
       House of Representatives
       Austin, Texas

FROM:  Jim Oliver, Director

In response to your request for a Fiscal Note on House Bill No. 594 (relating to the definition of "coercion" for the purpose of prosecution of offenses against public administration) this office has determined the following:

     No fiscal implication to the State or units of local government is anticipated.


Source:  LBB Staff:  JO, JWH, AL, CKM

71FHB594

**A-30**


AN ACT

relating to offenses involving coercion of a public servant.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 36.03, Penal Code, is amended by adding Subsection (c) to read as follows:

(c)  It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body.  For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

SECTION 2.  Section 36.01(1), Penal Code, is amended to read as follows:

(1)  "Coercion" means a threat, however communicated:

(A)  to commit any offense;

(B)  to inflict bodily injury on the person threatened or another;

(C)  to accuse any person of any offense;

(D)  to expose any person to hatred, contempt, or ridicule;

(E)  to harm the credit or business repute of any person; or

1

(F) to unlawfully take or withhold action as a public servant, or to cause a public servant to unlawfully take or withhold action.

SECTION 3. Section 36.03(a), Penal Code, is amended to read as follows:

(a) A person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

SECTION 4. (a) The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this purpose.

SECTION 5. This Act takes effect September 1, 1989.

SECTION 6. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended.

_____          _____
President of the Senate                 Speaker of the House

I certify that H.B. No. 594 was passed by the House on March 15, 1989, by a non-record vote.

                                   _____
                                     Chief Clerk of the House

I certify that H.B. No. 594 was passed by the Senate on April 27, 1989, by the following vote:  Yeas 31, Nays 0.

                                   _____
                                      Secretary of the Senate

APPROVED:  _____
                        Date

           _____
                      Governor

3

A-33

_____          _____
President of the Senate                    Speaker of the House

I certify that H.B. No. 594 was passed by the House
                        (1)

on _____March 15_____, 1989, by a non-record vote.
              (2)

                                  _____
                                       Chief Clerk of the House

I certify that H.B. No. 594 was passed by the Senate

on _____April 27, 1989, by the following vote:
                 (3)

Yeas 31 , Nays  0  _____.
    (4)                            (5)

                                  _____
                                       Secretary of the Senate

APPROVED:

        _____
                    Date

        _____
                  Governor

**** Preparation:   'A;CT27;

H. B. No. 594

**A BILL TO BE ENTITLED**

**AN ACT**

relating to the definition of "coercion" for the purpose of prosecution of offenses against public administration.

JAN 26 1989 — 1. Filed with the Chief Clerk.

FEB 14 1989 — 2. Read first time and Referred to Committee on
State Affairs

FEB 20 1989 — 3. Reported ___ favorably (as amended) (as substituted) and sent to Printer at 3:45pm
FEB 28 1989

FEB 28 1989 — 4. Printed and distributed at 6:53 pm

MAR 1 1989 — 5. Sent to Committee on Calendars at 5:22 pm

MAR 14 1989 — 6. Read second time as Subs. (amended), passed to third reading (failed) by (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, _____ present, not voting).

_____ — 7. Motion to reconsider and table the vote by which H.B. _____ was ordered engrossed prevailed (failed) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

_____ — 8. Constitutional Rule requiring bills to be read on three several days suspended (failed to suspend) by a four-fifths vote of _____ yeas, _____ nays, and _____ present, not voting.

MAR 15 1989 — 9. Read third time (amended); finally passed (failed) by (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, _____ present, not voting).

_____ — 10. Caption ordered amended to conform to body of bill.

_____ — 11. Motion to reconsider and table the vote by which H. B. _____ was finally passed prevailed (failed) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

MAR 15 1989 — 12. Ordered Engrossed at 10:40 am

MAR 15 1989 — 13. Engrossed.

MAR 15 1989 — 14. Returned to Chief Clerk at 12:32 pm

MAR 16 1989 — 15. Sent to Senate.

_Betty Murray_
Chief Clerk of the House

MAR 16 1989 — 16. Received from the House

MAR 20 1989 — 17. Read, referred to Committee on STATE AFFAIRS
26
APR 19 1989 — 18. Reported favorably

_____ — 19. Reported adversely, with favorable Committee Substitute; Committee Substitute read first time.

_____ — 20. Ordered not printed.

_____ — 21. Regular order of business suspended by
(a viva voce vote.)
(_____ yeas, _____ nays.)

A-35

22. To permit consideration, reading and passage, Senate and Constitutional Rules suspended by vote of _____ yeas, _____ nays.

APR 27 1989

*Laid before the Senate*

23. Read second time _____ passed to third reading by:

(a viva voce vote.)

( _____ yeas, _____ nays.)

24. Caption ordered amended to conform to body of bill.

APR 27 1989

25. Senate and Constitutional 3-Day Rules suspended by vote of __30__ yeas, __1__ nays to place bill on third reading and final passage.

APR 27 1989

26. Read third time and passed by

(a viva voce vote.)

( __31__ yeas, __0__ nays.)

*Betty King*

Secretary of the Senate

OTHER ACTION:        OTHER ACTION:

4-27-89

27. Returned to the House.

APR 27 1989

28. Received from the Senate (with amendments.) (as substituted.)

29. House (Concurred) (Refused to Concur) in Senate (Amendments) (Substitute) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, _____ present, not voting).

30. Conference Committee Ordered.

31. Conference Committee Report Adopted (Rejected) by a (Non-Record Vote) (Record Vote of _____ yeas, _____ nays, and _____ present, not voting).

APR 27 1989

32. Ordered Enrolled at __12:22 pm__

# EXHIBIT C

TEX. PENAL CODE § 36.03

1993 Revisions
Rep. Naishtat Amendment

AMENDMENT NO. (38)    BY _Naishtat_

Amend C.S.S.B. No. 1067 in Article 1, Section 1.01, proposed by striking proposed section 36.03 (c), Penal Code (page 144, lines 12-19, House Committee Report) and substituting the following:

(c) [It--is--an--exception--to--the--application--of] Subsection (a)(1) of this section does not apply to a [that-the] person who:

    (1) [influences-or-attempts-to--influence--the--public servant] is a member of the governing body of a governmental entity;

    (2) acts[,-and-that--the--action--that--influences--or attempts] to influence or attempts to influence another [the] public servant through [is] an official action, including deliberations by the governing body, taken by the person; and

    (3) does not act with the specific intent to obtain or attempt to obtain a benefit for the person [member-of-the-governing body.----For--the--purposes--of--this-subsection,-the-term-"official action"--includes--deliberations--by--the--governing--body---of---a governmental-entity].

## ADOPTED

MAY 6 1993

_Betty Murray_
Chief Clerk
House of Representatives

# EXHIBIT D

TEX. PENAL CODE § 36.01
TEX. PENAL CODE § 36.03

1993 Revisions

1993 REVISIONS TO CHAPTER 36
BY THE HOUSE OF
REPRESENTATIVES

# C.S.S.B. NO. 1067
Pages 191 – 194

communications common carrier or electric utility.

Sec. 33.04 [33.05]. ASSISTANCE BY ATTORNEY GENERAL. The attorney general, if requested to do so by a prosecuting attorney, may assist the prosecuting attorney in the investigation or prosecution of an offense under this chapter or of any other offense involving the use of a computer.

TITLE 8.  OFFENSES AGAINST PUBLIC ADMINISTRATION

CHAPTER 36.  BRIBERY AND CORRUPT INFLUENCE

Sec. 36.01.  DEFINITIONS.  In this chapter:

(1)  ["Coercion"-means-a-threat,-however-communicated:

[(A)--to-commit-any-offense;

[(B)--to-inflict--bodily--injury--on--the--per[son] threatened-or-another;

[(C)--to-accuse-any-person-of-any-offense;

[(D)--to--expose--any-person-to-hatred,-contem[pt] or-ridicule;

[(E)--to-harm-the--credit,--business--repute,--or pecuniary-interest-of-any-person;-or

[(F)--to--unlawfully-take-or-withhold-action-as-a public-servant,-or-to-cause-a-public-servant-to-unlawfully-take--or withhold-action.

[(2)--"Custody"-means:

[(A)--detained---or---under--arrest--by--a--peace officer;-or

[(B)--under--restraint--by---a---public---servant pursuant-to-an-order-of-a-court.

[(3)--"Official---proceeding"---means---any---type---of

191

**A-41**

administrative,-executive,-legislative,-or-judicial-proceeding-that may--be-conducted-before-a-public-servant-authorized-by-law-to-take statements-under-oath.

[(4)] "Party official" means a person who holds any position or office in a political party, whether by election, appointment, or employment.

(2) [(5)] "Benefit" means anything reasonably regarded as pecuniary gain or pecuniary advantage, and includes a [including] benefit to any other person in whose welfare the beneficiary has a direct and substantial interest, but does not include an expenditure for food or beverage required to be reported under Chapter 305, Government Code.

(3) [(6)] "Vote" means to cast a ballot in an election regulated by law.

Sec. 36.02. BRIBERY. (a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

(1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

(2) any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

(3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official; or

(4) any benefit that is a political contribution as defined by Title 15, Election Code, or that is an expenditure

required to be reported under Chapter 305, Government Code, if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

(b) It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any other reason.

(c) It is no defense to prosecution under this section that the benefit is not offered or conferred or that the benefit is not solicited or accepted until after:

(1) the decision, opinion, recommendation, vote, or other exercise of discretion has occurred; or

(2) the public servant ceases to be a public servant.

(d) It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) [of-this-section] that the benefit is a political contribution [accepted] as defined by Title 15, Election Code, or an expenditure required to be reported under Chapter 305, Government Code.

(e) An offense under this section is a felony of the second degree.

Sec. 36.03. COERCION OF PUBLIC SERVANT OR VOTER. (a) A

person commits an offense if by means of coercion he:

(1) influences or attempts to influence a public servant in a specific exercise of his official power or a specific performance of his official duty or influences or attempts to influence a public servant to violate the public servant's known legal duty; or

(2) influences or attempts to influence a voter not to vote or to vote in a particular manner.

(b) An offense under this section is a Class A misdemeanor unless the coercion is a threat to commit a felony, in which event it is a felony of the third degree.

(c) It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body. For the purposes of this subsection, the term "official action" includes deliberations by the governing body of a governmental entity.

Sec. 36.04. IMPROPER INFLUENCE. (a) A person commits an offense if he privately addresses a representation, entreaty, argument, or other communication to any public servant who exercises or will exercise official discretion in an adjudicatory proceeding with an intent to influence the outcome of the proceeding on the basis of considerations other than those authorized by law.

(b) For purposes of this section, "adjudicatory proceeding"

194

A-44

# 1993 REVISIONS TO SECTION 1.07 BY THE HOUSE OF REPRESENTATIVES

# C.S.S.B. No. 1067
## Pages 5 – 6

unit of this code in which the reference appears.

Sec. 1.06. COMPUTATION OF AGE. A person attains a specified age on the day of the anniversary of his birthdate.

Sec. 1.07. DEFINITIONS. (a) In this code:

(1) "Act" means a bodily movement, whether voluntary or involuntary, and includes speech.

(2) "Actor" ["Suspect"] means a person whose criminal responsibility is in issue in a criminal action. Whenever the term "suspect" ["actor"] is used in this code, it means "actor." ["suspect."]

(3) "Agency" includes authority, board, bureau, commission, committee, council, department, district, division, and office.

(4) "Alcoholic beverage" has the meaning assigned by Section 1.04, Alcoholic Beverage Code.

(5) [(4)] "Another" means a person other than the actor.

(6) [(5)] "Association" means a government or governmental subdivision or agency, trust, partnership, or two or more persons having a joint or common economic interest.

(7) [(6)] "Benefit" means anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested.

(8) [(7)] "Bodily injury" means physical pain, illness, or any impairment of physical condition.

(9) "Coercion" means a threat, however communicated:

(A) to commit an offense;

5

A-46

(B) to inflict bodily injury in the future the person threatened or another;

(C) to accuse a person of any offense;

(D) to expose a person to hatred, contempt, ridicule;

(E) to harm the credit or business repute of person; or

(F) to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

(10) [(8)] "Conduct" means an act or omission and its accompanying mental state.

(11) [(9)] "Consent" means assent in fact, whether express or apparent.

(12) "Controlled substance" has the meaning assigned by Section 481.002, Health and Safety Code.

(13) [(9.1)] "Corporation" includes nonprofit corporations, professional associations created pursuant to statute, and joint stock companies.

(14) "Correctional facility" means a place designated by law for the confinement of a person arrested for, charged with, or convicted of a criminal offense. The term includes:

(A) a municipal or county jail;

(B) a confinement facility operated by the Texas Department of Criminal Justice;

(C) a confinement facility operated under contract with any division of the Texas Department of Criminal Justice; and

6

**A-47**

# EXHIBIT E

## SPEECH OR DEBATE PRIVILEGE CHART

## SPEECH OR DEBATE PRIVILEGE:
## MEMBERSHIP OF POLITICAL BRANCH AFFORDED THE PRIVILEGE

| CASE | JURISDICTION | POLITICAL BRANCH OF DEFENDANT |
|---|---|---|
| *Mutscher v. State*, 514 S.W.2d 905 (Tex.Crim.App.1974) | COURT OF CRIMINAL APPEALS OF TEXAS | Gus F. Mutscher, Jr.: Speaker of the Texas House of Representatives<br><br>S. Rush McGinty: Executive Assistant to Speaker Mutscher Thomas C. Shannon: Member of the Texas House of Representatives |
| *United States v. Gillock*, 445 U.S. 360 (1980) | UNITED STATES SUPREME COURT | Tennessee state senator |
| *Hutchinson v. Proxmire*, 443 U.S. 111 (1979) | UNITED STATES SUPREME COURT | United States Senator from Wisconsin |
| *United States v. Helstoski*, 442 U.S. 477 (1979) | UNITED STATES SUPREME COURT | Member of United States House of Representatives from New Jersey |
| *United States v. Brewster*, 408 U.S. 501 (1972) | UNITED STATES SUPREME COURT | United States Senator from Maryland |
| *Gravel v. United States*, 408 U.S. 606 (1972) | UNITED STATES SUPREME COURT | United States Senator of Alaska |
| *United States v. Johnson*, 383 U.S. 169 (1966) | UNITED STATES SUPREME COURT | United States Congressman from Maryland |
| *Tenney v. Brandhove*, 341 U.S. 367 (1951) | UNITED STATES SUPREME COURT | Member of the California Legislature and other members of a committee of the California Legislature. (Mayor of San Francisco included in lawsuit, but Supreme Court severed his claim and limited "legislative immunity" discussion only to members of the legislature.) |
| *Kilbourn v. Thompson*, 103 U.S. 168 (1880) | UNITED STATES SUPREME COURT | John G. Thompson: Sergeant-at-arms of the House of Representative<br><br>Michael C. Kerr: Member of United States House of Representatives<br><br>John M. Glover: Member of United States House of Representatives<br><br>Burwell P. Lewis: Member of United States House of Representatives |

| | | |
|---|---|---|
| | | Jeptha D. New: Member of United States House of Representatives |
| | | A. Herr Smith: Member of United States House of Representatives |
| *United States v. Renzi*, __F.3d __, 2014 WL 5032356 (9th Cir. 2014) | NINTH CIRCUIT | Member of United States House of Representatives from Arizona |
| *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992) | ELEVENTH CIRCUIT | Member of United States House of Representatives from Georgia |
| *United States v. Biaggi*, 853 F.2d 89 (2nd Cir. 1988) | SECOND CIRCUIT | Member of United States House of Representatives from New York |
| *In re Grand Jury (Colafella),* 821 F.2d 946 (3rd Cir. 1987) (rehearing in banc) | THIRD CIRCUIT | Nicholas Colafella: Chairman of investigative committee of Pennsylvania House of Representatives |
| | | Reizdan Moore: Committee counsel and records custodian of the Committee |
| | | Speaker of the Pennsylvania House of Representatives (unnamed) |
| | | Majority leader of the Pennsylvania House of Representatives (unnamed) |
| | | Minority leader of the Pennsylvania House of Representatives (unnamed) |
| | | Bipartisan Committee of the Administration of the Pennsylvania House |
| *In re Grand Jury (Eilberg),* 587 F.2d 589 (3rd Cir. 1978) | THIRD CIRCUIT | Edmund L. Hensaw: Clerk of the Pennsylvania House of Representatives |
| | | Joshua Eilberg: Member of the Pennsylvania House of Representatives |
| *United States v. DiCarlo*, 565F.2d 802 (1st Cir. 1977) | FIRST CIRCUIT | Francis J. DiMento: Member of the Massachusetts State Senate |
| | | Earle C. Cooley: Member of the Massachusetts State Senate |

**A-50**

| | | |
|---|---|---|
| *United States v. Craig*, 573 F.2d 455 (7th Cir. 1977) (rehearing in banc denied) | SEVENTH CIRCUIT | Robert Craig: Member of the Illinois House of Representatives; Minority Whip

Frank P. North: Member of the Illinois House of Representatives

Jack Walker: Member of the Illinois Senate
Peter V. Pappas: Attorney and lobbyist for Secretaries of State Paul Powell, John Lewis and Michael Hewlett |
| *In re Grand Jury (Cianfrani),* 563 F.2d 577 (3rd Cir. 1977) | THIRD CIRCUIT | Henry Cianfrani: Pennsylvania state senator

Thomas Kalman: Chief Clerk of the Pennsylvania Senate |
| *Ford v. Tennessee Senate*, 2007 WL 5659414 (W.D. Tenn. 2007) (not reported) | DISTRICT COURT – WESTERN DIVISION OF TENNESSEE | Every member of the Tennessee Senate

John S. Wilder: Lt. Governor (in his official capacity) |
| *Cano v. Davis*, 193 F.Supp.2d 1177 (C.D. Calif. 2002) | DISTRICT COURT – CENTRAL DIVISION CALIFORNIA | Antonio Gonzalez – third party non-legislator

Juan Vargas – Member of the California General Assembly |
| *United States v. Eilberg*, 507 F.Supp. 267 (E.D. Penn. 1980) | DISTRICT COURT – EASTERN DIVISION PENNSYLVANIA | Member of United States House of Representatives from Pennsylvania |
| *United States Football League v. National Football League*, 1986 WL 6341 (S.D.N.Y. 1986) (not reported) | DISTRICT COURT – SOUTH DISTRICT OF NEW YORK | United States Senator Alfonse D'Amato |
| *United States v. Nelson*, 486 F.Supp. 464 (W.D. Mich. 1980) | DISTRICT COURT – WESTERN DIVISION OF MICHIGAN | Earl E. Nelson: State senator from Michigan |

**A-51**